252 So.2d 7

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMER-ICA, an Unincorporated Labor Organization or Association,

v.

Mary B. HATAS, as Special Administratrix of the Estate of William Andrew Hatas.

2 Div. 506.

Supreme Court of Alabama.

Aug. 5, 1971.

Rehearing Denied Sept. 9, 1971.

Beddow, Embry & Beddow, Birmingham, Pruitt & Pruitt, Livingston, Raymond W. Bergan, Washington, D. C., for appellant.

348

Robert S. Vance, Roscoe B. Hogan, Birmingham, and Marcus McConnell, Jr., Livingston, for appellee.

LAWSON, Justice.

This suit was filed in the Circuit Court of Sumter County on May 24, 1963, by Mrs. Mary B. Hatas against Edward Grady Partin; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 5, an unincorporated labor organization or association, hereinafter referred to as Local No. 5 (The correct name of Local No. 5 appears to be General Truck Drivers, Warehousemen and Helpers, Local Union No. 5.); and against International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated labor organization or association, hereinafter referred to as International.

The suit is a wrongful death action brought under the authority of § 123, Title 7, Code 1940, and plaintiff sues as special administratrix of the estate of William Andrew Hatas, her deceased son.

The case went to the jury on behalf of the plaintiff on an amended complaint consisting of Counts One-A and One-B. In both counts plaintiff sought to recover damages for the death of her son, which occurred on Christmas morning, 1961, at about one o'clock when an automobile in which he was riding as a passenger was struck by another automobile on U. S. Highway 80 in Sumter County. Count One-A charges negligence against all defendants. Count One-B is a wanton count against a servant defendant, Partin, and his alleged masters, the other defendants.

International filed three pleas: not guilty, denial of agency, and denial of the trial court's jurisdiction over the subject matter of the suit. As will hereafter appear, there is no reason to refer to the pleas filed by the other defendants.

The trial began on September 27, 1965. On September 30, 1965, the jury returned a general verdict for the plaintiff against all of the defendants and assessed the plaintiff's damages at $150,000. Judgment was entered on the verdict on the same day that it was returned.

On or about October 14, 1965, the Courthouse of Marengo County, where the official court reporter of the Seventeenth Judicial Circuit maintained her office, was destroyed by fire. All shorthand notes and electronic recordings made by the official court reporter during the course of the trial were consumed by the fire. Marengo and Sumter Counties are both in the Seventeenth Judicial Circuit.

Of the three defendants, only International timely filed a motion for new trial. That motion was duly continued by the trial court from time to time. It was argued and taken under submission on March 4, 1966. On November 10, 1966, the motion for new trial was overruled and denied.

A supersedeas bond was filed by International on March 14, 1967, and was approved by the Circuit Clerk of Sumter County on that day. That bond is so conditioned as to be sufficient as a bond to secure costs of appeal.—Dortch Baking Co. v. Schoel, 239 Ala. 266, 194 So. 807; Bedwell v. Dean, 221 Ala. 224, 128 So. 389; Greenfield v. Powell, 220 Ala. 690, 127 So. 171. *Cf.* Ralston Purina Co. v. Pierce, 265 Ala. 365, 90 So.2d 922.

The cause was submitted here on March 18, 1968, on motions and on merits.

Motions

International, apparently out of an abundance of precaution, prior to submission, moved this court "to make and enter an order of severance permitting this Appellant to make separate assignments of error in this cause and ratifying and confirming the separate assignments of error heretofore filed in said cause by Appellant."

That motion is denied because there is no need for an order of severance of the assignments of error. As indicated, International alone appealed. Notice was given to the other defendants in accordance with the provisions of § 804, Title 7, Code 1940, to appear before this court and unite in the appeal if they so desired. They have not appeared. The assignments of error made by International complain of error prejudicial to it. See Pennington v. Birmingham Baseball Club, Inc., 277 Ala. 336, 170 So.2d 410; Maya Corp. v. Smith, 240 Ala. 371, 199 So. 549.

The appellee, Mrs. Hatas, prior to submission, filed her "Motion to Strike Purported Succinct Statement of the Evidence in Lieu of Court Reporter's Transcript; Motion to Dismiss Appeal or In the Alternative to Affirm Judgment of the Court Below," to which we will refer hereinafter as appellee's motion.

The transcript of the record does not contain a complete transcript of the evidence because, as noted above, all of the court reporter's shorthand notes and electronic recordings were destroyed by fire before some of them could be transcribed.

The record does contain certificates of the trial judge to the effect that certain designated parts of the transcript of the record were approved by him as a "Succinct Statement of the Evidence in Lieu of a Transcript of the Evidence * * *," to which we will refer sometimes hereinafter as the succinct statement of the evidence.

A succinct statement of the evidence in lieu of a transcript of the evidence is authorized, "If the court reporter be deceased, or for any other reason cannot transcribe the evidence, * * *"—§ 5 of Act 80, approved June 10, 1953, Acts of Alabama 1953, Vol. 1, p. 122, which Act is amendatory of Act 461, approved July 12, 1943, as amended by Act 886, approved September 12, 1951. Section 5 of Act 80, *supra,* with a few immaterial changes, is carried in the 1955 Cumulative Pocket Part to Vol. Two of the 1940 Code of Alabama and in the 1958 Recompiled Code of Alabama (unofficial) as § 827(3), Title 7, and we will refer sometimes hereinafter to the provisions of § 5 of Act 80, *supra,* as § 827(3).

Grounds of appellee's motion which attack the succinct statement of the evidence are to the effect that it does not meet the requirements of § 827(3), *supra.*

In brief filed in support of appellee's motion it is said, in effect, that International did not attempt to present a succinct statement of the evidence in compliance with § 827(3), *supra*; that the transcript of the record does not contain a "single succinct statement as authorized by the statute"; that "the evidence contained in the mass of different sections" is unintelligible.

International did present a proposed succinct statement of the evidence to the trial judge, which met with his approval but not with the approval of appellee, who filed objections as authorized by § 2 of

Act 886, approved September 12, 1951, *supra.* See 1955 Cumulative Pocket Part to Vol. Two of the 1940 Code of Alabama and the 1958 Recompiled Code of Alabama (unofficial), where the provisions of § 2, Act 886, *supra,* are carried as § 827 (1a), Title 7.

After a succinct statement of the evidence is presented to a trial judge, he "shall hear the same and make such corrections in and additions to it as may be proper and shall approve the same as a transcript of the evidence."—§ 827(3), *supra.* The trial judge conducted hearings on several occasions in an effort to arrive at a succinct statement of the evidence satisfactory to both parties. It is perhaps unnecessary to observe that neither party to this appeal is altogether satisfied with the end result, but we entertain the view that the trial judge exercised not only good judgment in his rulings, but demonstrated commendable patience in a difficult situation. Appellee has not pointed out any instance where the succinct statement of the evidence as incorporated in the transcript of the record works to her disadvantage.

Appellee is correct in pointing out that the transcript of the record does not contain "a single succinct statement" in that it is not like a bill of exceptions or a transcript of the evidence which usually begins on a certain page of the transcript of the record and continues on successive pages until completed. But that difference should not deprive International of a right of review.

But appellee, as we have shown, asserts that "the evidence contained in the mass of different sections" is unintelligible. By "sections" appellee has reference to the fact that the succinct statement of the evidence as finally approved consists of several different parts of the transcript of the record scattered, so to speak, throughout that transcript.

The end result of the several hearings was an order approving the original succinct statement of the evidence except as it was corrected, changed, or added to by virtue of certain rulings made by the court during the several hearings.

The format of the succinct statement of the evidence incorporated in the transcript of the record has proven to be burdensome to us, but we believe we understand it and the rulings of the trial court incorporated in it, as well as the rulings which resulted in its composition.

While the format of the succinct statement of the evidence has presented some problems to us in disposing of this appeal, we are unwilling to say that the succinct statement of the evidence is so unintelligible as to require us to strike it or to dismiss the appeal or to affirm the judgment below.

There is a ground in appellee's motion to the effect that the appeal should be dismissed because it was not taken within six months from the date of the original judgment (§ 788, Title 7, Code 1940) and that while the transcript of the record showed that a motion for new trial was timely presented to the trial judge, it did not reflect that such motion was filed.

The transcript of the record as filed here originally did not show that the motion for new trial was filed. But that deficiency was corrected prior to submission by a return to a writ of certiorari wherein it is made to appear that the motion for new trial was timely filed.

Appellee's motion is denied.

Merits

There are fifty-one assignments of error, many of which are repetitious in nature or related. Consequently, we will not deal separately with each assignment, but will treat them as they are grouped for argument in the original brief filed here by the appellant, International. As far as practicable, we will consider the assignments of error in the order in which they are argued in that brief.

International argues its assignments of error to the effect that the trial court erred in overruling those grounds of International's demurrer which took the point that neither count of the complaint which went to the jury (Counts One-A and One-B) stated a cause of action in that they failed to allege that suit was brought within two years of the date of death of plaintiff's intestate.

The last sentence of § 123, Title 7, *supra*, under which this suit was brought, reads: "Such action must be brought within two years from and after the death of the testator or intestate."

It is not averred in Count One-A or in Count One-B that suit was brought within two years from and after the death of plaintiff's intestate, nor is the day on which suit was brought (filed) mentioned in either of those counts.

In both counts, however, it is alleged that plaintiff's intestate died on December 25, 1961, and an endorsement on the complaint shows that it was filed in the office of the Circuit Clerk of Sumter County on May 24, 1963, so it appears from the complaint, that is, from averments in each count and from the endorsement as to the date of filing, that the action was brought within two years "from and after the death" of plaintiff's intestate.

International apparently takes the position that the endorsement as to the date of filing of the complaint cannot be considered in connection with the averments of the complaint to determine whether the action was brought timely, saying in its brief:

> "Thus looking at the statute, as this Court has interpreted it, a complaint brought under its terms must allege, inter alia: this action is brought within two years from and after the death of plaintiff's intestate; or: this suit is brought in a court of competent jurisdiction within two years of the date of death of plaintiff's intestate. * * *"

International has cited no case which expressly so holds and no such case has come to our attention. International places much emphasis upon the following quotation from Parker v. Fies & Sons, 243 Ala. 348, 350, 10 So.2d 13, 15: "The statute [§ 123, Title 7] requires suit brought within two years after death. This is not a statute of limitations, but of the essence of the cause of action, to be disclosed *by averment* and proof. (Authorities cited)" (Emphasis supplied)

Apparently the words which we have italicized above in the quotation from Parker v. Fies & Sons, *supra*, have been of some concern to counsel in the past because there are cases wherein the complaint contains the following averment: "The plaintiff avers this suit is brought and filed in court having jurisdiction thereof within two years after the death of plaintiff's said intestate." The original transcript in Woodward Iron Co. v. Craig, 256 Ala. 37, 53 So.2d 586, and Black Diamond Coal Mining Co. v. Ellis, Adm'x, 256 Ala. 72, 53 So.2d 593, disclose such averments.

The language which we last quoted above is but a conclusion of the pleader and if the time of filing as endorsed on the complaint was in conflict therewith, the date of the filing as endorsed, while not conclusive, would prevail over a conflict in the averments of the complaint until shown to be incorrect.

In this case the trial court had before it a complaint containing two counts, in both of which the date of the death of the plaintiff's intestate was alleged and on which complaint was endorsed the date of filing. So it affirmatively appears from the complaint that the action was brought within two years from and after the death of plaintiff's intestate. Aside from the fact that the date of the filing of the complaint was shown on its face, we have held that courts take judicial notice of their own records.—Ex parte Hacker, 250 Ala. 64, 33 So.2d 324; Badham v. Badham, 244 Ala. 622, 14 So.2d 730. In Parker v. Bedwell,

243 Ala. 221, 222, 8 So.2d 893, 894, we said as follows:

"The further pertinent facts are that the first call of the Seventh Division, after taking of this appeal, was the second Monday in January, 1942, being January 12, 1942. The transcript 'had not been filed at that time, neither had this cause been docketed upon Certificate to the Court.' Of these facts the court takes judicial knowledge. * * *"

If a court can take judicial knowledge of the fact that a transcript had not been filed at a given time, it can also take judicial knowledge of the time in which a pleading or record is filed.

We have said that matters of fact of which judicial notice is taken need not be alleged.—City Council of Montgomery v. Wright, 72 Ala. 411; Alabama Gr. Sou. R. Co. v. Cardwell, 171 Ala. 274, 55 So. 185; Moon v. Hines, 205 Ala. 355, 87 So. 603; Louisville & N. R. Co. v. Shikle, 206 Ala. 494, 90 So. 900; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Alabama Power Co. v. Henson, 238 Ala. 348, 191 So. 379. In Statham v. Statham, 282 Ala. 322, 325, 211 So.2d 456, 459, appears the following: "Judicial notice is a matter of evidence, and not pleading. 31 C.J.S. Evidence § 6, p. 822." The statement is not fully supported by the authority cited in that it is not stated therein that judicial notice is not a matter of pleading.

We hold that the trial court did not err in overruling the grounds of International's demurrer which took the point that neither count of the complaint which went to the jury stated a cause of action in that they failed to allege that suit was brought within two years from and after the date of the death of plaintiff's intestate.

International argues jointly its Assignments of Error 9 and 11. They read:

"9. The trial court erred in its order denying this defendant—appellant's motion for a new trial.

* * * * * *

"11. For that the trial court erred in its ruling which required defendant International, this Appellant, to proceed to the selection of a jury with the exercise of only two preemptory [sic] challenges on its part, to which ruling of the court this appellant duly and legally objected and when such objection being overruled, duly and legally excepted thereto."

We have said that a general assignment of error grounded on the refusal of the trial court to grant a motion for a new trial is sufficient to invite a review of any ground well stated in the motion for new trial and properly argued by appellant, that is, when the motion for a new trial is sufficient to specify the precise error alleged to have occurred, a general assignment of error on appeal for denying the motion is sufficient to bring up for review those matters so precisely set out in the motion. However, grounds of the motion for a new trial relied upon must sufficiently specify the precise error alleged to have occurred. In other words, a ground of a motion for a new trial is to be considered the same as if it were a separate assignment.—Boudrow v. H. & R. Construction Co., 284 Ala. 60, 222 So.2d 152, and cases cited. *Cf.* Starnes v. Brassell, 286 Ala. 437, 241 So.2d 109, an equity case.

No ground of the motion for new trial is referred to in appellant's argument made in support of Assignment 9 and we are not certain that we have correctly related that argument to the grounds of the motion for new trial which counsel for appellant intended the argument to be directed.

Perhaps a part of the argument was intended to be considered by us as being in support of Ground 32 of the motion for new trial, which ground reads:

"32. For that this defendant was not accorded its right to four peremptory challenges of the venire pursuant to the provisions of Title 30, Section 53, Code of Alabama, 1940, as amended."

Both parties to this appeal concede that there was a demand for a struck jury. Consequently, under our holding in Holman v. Baker, 277 Ala. 310, 169 So.2d 429, the trial court did not err in refusing International's four peremptory challenges, pursuant to § 53, Title 30, Code 1940, which section reads: "Each party has the right to challenge four of the jury peremptorily in civil causes."

Perhaps a part of the argument is made in support of Ground 48 of the motion for new trial, which ground reads:

> "This defendant alleges that it was only afforded two strikes from the venire of twenty-seven jurors from which the jury that tried this case was empaneled."

Ground 48 of the motion for new trial and Assignment of Error 11 were apparently drafted to raise the same point. They appear to complain about the fact that they did not get enough strikes from the venire. But there is no argument in support of such a contention. The argument seems to be that the court erred in requiring the parties to strike from a list of twenty-seven jurors rather than from a list of twenty-four jurors.

As previously shown, this case was tried in the Seventeenth Judicial Circuit, which did not have more than three circuit judges. Consequently, under the provisions of § 54, Title 30, Code 1940, as amended, the trial court did not err in requiring the parties to strike from a list containing more than twenty-four jurors. See Act 273, approved August 10, 1965, Acts of Alabama 1965, p. 386, and Act 679, approved September 1, 1965, Acts of Alabama 1965, p. 1241. Section 54, Title 30, *supra,* was amended again in 1967 after this case was tried, so, of course, we are not concerned here with the 1967 amendment. But see Act 113, approved May 3, 1967, Acts of Alabama 1967, p. 155. Also see Rosenbush Feed Co. v. Garrison, 251 Ala. 245, 37 So.2d 106; Hall v. Dexter Gas Co., 277 Ala. 360, 170 So.2d 796. The language in Holman v. Baker, *supra,* to the effect that it is in judicial circuits having *not* more than two (now three) judges that parties must strike from a list containing no more than twenty-four jurors was used inadvertently and is hereby disapproved. There is other language in Holman v. Baker, *supra,* which recognizes the correct rule.

We hold that the trial court did not err in overruling Grounds 32 and 48 of the motion for new trial or requiring the parties to strike from a list containing more than twenty-four jurors.

Assignments of Error 3 through 6 charge error on the part of the trial court in refusing to give at International's request six affirmative instructions in varying language, but all in favor of International.

We need to consider only International's written requested Charge 1–3, the refusal of which is the basis of Assignment of Error 5. Charge 1–3 reads:

> "I charge you, gentlemen of the jury, that if you believe the evidence in this case, you cannot return a verdict in favor of the plaintiff and against the defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated labor association."

International contends that the trial court erred in refusing its requested Charge 1–3 because the plaintiff failed to comply with the provisions of § 153, Title 61, which reads:

> "Before a judgment is rendered in a suit brought by such foreign executor or administrator, the plaintiff must prove that he has complied in all respects with the provisions of section 151 of this title, and failing to do so, he cannot recover."

Section 151, Title 61, Code 1940, reads:

> "Any executor or administrator who has obtained letters testamentary or of

administration on the estate of a person who was not, at the time of his death, an inhabitant of this state, in any other of the United States, and who has not obtained letters of administration thereon in this state, as authorized by article 7 of chapter 2 of this title, may maintain suits and recover or receive property in this state:

"By recording, at any time before judgment, or the receipt of the property, a copy of his letters, duly authenticated according to the laws of the United States, in the office of the judge of probate of the county in which such suit is brought or property received.

"By giving bond, with at least two good and sufficient sureties, payable to and approved by such judge of probate, in such amount as he may prescribe, to be determined with reference to the value of the property to be recovered or received, and conditioned to faithfully administer such recovery or property according to law."

The plaintiff, a foreign administratrix of the estate of a person who was not at the time of his death an inhabitant of this state, on September 16, 1965, filed in the office of the Judge of Probate of Sumter County a duly authenticated copy of her letters of administration issued to her by the Milwaukee County Court, Milwaukee, Wisconsin, on May 7, 1963. The plantiff having given bond with two good and sufficient sureties, payable to and in such amount as fixed by the Judge of Probate, that official on September 22, 1965, approved the bond and ordered that the bond and the letters of administration be recorded. They were recorded.

A certificate of the Judge of Probate showing the facts delineated in the preceding paragraph was offered by plaintiff's counsel while examining plaintiff. The Circuit Clerk stamped the certificate "filed in open court 9/28/65 J. C. Scales Circuit Clerk."

International argues that since the circuit clerk stamped the certificate as shown above and did not mark the certificate as an exhibit, the certificate was not in evidence and therefore the plaintiff failed to prove that she complied in all respects with the provisions of § 151, Title 61, *supra.*

We lay aside the insistence of appellee, the plaintiff below, to the effect that there was no need for her to prove a compliance with the provisions of § 151, Title 61, *supra,* since International did not file a plea of "ne unques administrator [administratrix]." In fact, we lay aside all insistences of appellee, plaintiff below, made in opposition to International's contention that it was entitled to the affirmative instruction because of the failure of the proof required by § 153, Title 61, *supra,* except the insistence that the transcript of the record shows that there was a substantial compliance with the requirements of that section. It would be altogether unrealistic to hold that there was a failure of proof within the meaning of § 153, Title 61, because of the manner in which the Circuit Clerk labeled the certificate of the Judge of Probate.

International next insists that it was entitled to have the trial court give its written requested Charge 1–3, as well as the other affirmative charges which it requested, because the plaintiff failed "to *prove* that suit was filed within the two-year period prescribed by the Homicide Act, Tit. 7, Section 123."

The date of the death of plaintiff's intestate was proved as well as alleged. Plaintiff did not call a witness to testify as to the date on which the action was brought nor did she introduce in evidence the complaint on which appeared the date of its filing. It was not necessary for plaintiff to offer such proof. As we have pointed out above, courts take judicial notice of their own records, so on the face of the record it is made to appear that the action was brought within two years from

the date of the death of plaintiff's intestate.

For the purposes of this appeal, International does not question the sufficiency of the evidence to support a finding that plaintiff's intestate died as the proximate result of the negligent and wanton manner in which the defendant Partin drove an automobile into the rear end of an automobile in which plaintiff's intestate was riding at the time and place referred to in the third paragraph of this opinion.

But International strenuously insists that there was not a scintilla of evidence tending to show that at the time of the collision Partin was an agent, servant or employee of International, acting within the line and scope of his employment. Consequently, International argues that the trial court erred in refusing to give its written requested Charge 1-3 and similar charges. We do not agree.

We refer to oft-stated rules of review. Where the affirmative charge is refused a defendant, the appellate court in reviewing the ruling must accept as true the evidence favorable to the plaintiff and look to the strongest tendencies of the testimony in his behalf.—Smith v. Lawson, 264 Ala. 389, 88 So.2d 322; Redmond v. Self, 265 Ala. 155, 90 So.2d 238; Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696; Hall v. Dexter Gas Co., 277 Ala. 360, 170 So.2d 796; Mobile Press Register, Inc. v. Padgett, 285 Ala. 463, 233 So.2d 472. In civil cases the question must go to the jury if the evidence or the reasonable inferences arising therefrom furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory of the complaint.—Alabama Gr. Sou. R. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A. L.R.2d 1190; Alabama Power Co. v. Scholz, 283 Ala. 232, 215 So.2d 447.

The defendant Partin was called as a witness by the plaintiff, Mrs. Hatas. Partin's testimony tends to show that in 1961 he was a resident of Baton Rouge, Louisiana, where he was "business manager, secretary-treasurer for Local Five on [sic] the Teamsters Union," which position at the time of the trial he had held for approximately fifteen years; that in the fall of 1961 he received telephone calls which originated in Birmingham and came from a "gentleman" or from "somebody" or from Mr. Webb, wherein the caller requested that he, Partin, come to Birmingham and render assistance in carrying on a strike against Bowman Transportation Company, which was in progress in the State of Alabama; that after receiving such calls he called Mr. James Hoffa, the General President of International, for instructions as to whether he should go up and assist Mr. Webb; that Mr. Hoffa instructed him to go to the assistance of Mr. Webb and Local 612; that all locals worked under the actual direction of International, so he complied with Mr. Hoffa's instructions and went to Birmingham a few days prior to Christmas of 1961; that after arriving in Alabama he was "in and around a radius of a hundred miles of Birmingham," working on the Bowman Transportation Company strike, which was "pretty well state-wide;" that he, along with others, followed the trucks of Bowman Transportation Company in order to get information relative to the strike; that while following the Bowman Transportation Company trucks, "We'd write down the names of the trucks, who was behind them, how many cars were behind them, and calling the number of the truck, which way they were going, what route, and whether cars were following them or not"; that such activities were carried on under instructions from Mr. Hoffa; that on the morning of December 24, 1961, he and others followed Bowman Transportation Company trucks "around" Anniston, Alabama, and then returned to Birmingham, where he met with some of the people "involved in following the trucks"; that after the meeting he made calls to "people in connection with the strike"; that he could not say "who all the people involved in the

strike were"; that, "We had certain people we called. Without a list of the numbers, I couldn't say who all it was"; that after his business in Birmingham he reported to Mr. Hoffa in regard to the Bowman strike, advising him "whether they was winning or losing it, how the people were standing up under the strike, etc."

The record shows that the "Mr. Webb" to whom Partin referred was, in December, 1961, the President of International's Local 612 with headquarters in Birmingham, which local was then directly involved in the Bowman Transportation Company strike.

Partin further testified that he left Birmingham after dark on Christmas Eve in 1961 en route to his home in Baton Rouge; that he drove in a westward direction through Sumter County, Alabama, on U. S. Highway 80 during the early hours of Christmas morning of 1961; that the automobile which he was driving was in the "union's" name but his name was stenciled on the side of the automobile in that he was an officer of the union; that a week or two after his return to Baton Rouge he reported to Mr. Hoffa concerning his activities in Alabama; that he was reimbursed by Mr. Hoffa for the expenses which he incurred in making the trip to Alabama.

Partin did not admit that the car which he was driving collided with the car in which plaintiff's intestate was riding but he did not deny that fact and his testimony, along with other evidence, is certainly sufficient to support a finding that he did drive his automobile into the rear of the automobile in which plaintiff's intestate was riding. We say again, however, that International does not contend on this appeal that Partin's automobile did not collide with the automobile in which plaintiff's intestate was riding or that such collision did not result from a negligent or wanton act on the part of Partin.

International insists that it was entitled to have the trial court give its requested affirmative instructions because at the time of the collision Partin was en route to his home in Baton Rouge, Louisiana, and was not then engaged within the line and scope of his employment as a servant, agent or employee of International.

International cites Thomas v. Hubbert, 280 Ala. 302, 193 So.2d 746; Stevens v. Deaton Truck Line, 256 Ala. 229, 54 So.2d 464; Smith v. Brown-Service Ins. Co., 250 Ala. 613, 35 So.2d 490, in support of the general rule that an employee using an automobile, whether belonging to his master or to himself, in going to and from his place of work, is not at such times regarded as engaged in work for his master but is acting solely for his own purposes.

There is an exception to the rule, the general rule, as stated in the cases cited by International. In 5 Blashfield's Cyc. of Automobile Law and Practice, § 3041, the statement of the general rule is followed by this language:

> "An exception to the above rule is found in cases where the employee, before or after customary working hours, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer. In such cases, an injury arising en route from the home to the place where the work is performed, or from the place of performance of the work to the home, is considered as arising out of and in the course of the employment."

We entertain the view that the facts of this case bring it within the purview of the exception. Where the expenses of the trip were paid by International through Mr. Hoffa and Partin's return to Baton Rouge was not only beneficial to him, but to International as well as to Local No. 5, we think the following statement in Atlanta Life Ins. Co. et al. v.

Stanley et al., 276 Ala. 642, 647, 165 So.2d 731, 735, is applicable to the facts of this case:

"* * * However, where a master bears a part of the expense of an automobile used by his servant in going to and from his work and in and about his employment, and such transportation arrangement is beneficial to both, the relation of master and servant continues while the automobile is used for such purposes. * * *"

International advances the argument that the trial court erred in not giving International's requested affirmative charges because, aside from Partin's testimony, there was no evidence tending to show that Partin was an agent, servant or employee acting within the line and scope of his employment at the time of the collision and Partin's testimony should have been excluded on International's motion.

We will hereinafter deal with the trial court's refusal to exclude Partin's testimony, but we will not consider that ruling in connection with the refusal of the trial court to give the affirmative instructions requested by International.

We hold that reversible error is not made to appear in connection with the trial court's refusal to give the affirmative instructions requested by International.

Assignments of Error 12, 15, and 47, which are argued in bulk in International's brief, read:

"12. The trial court erred in refusing to direct the witness, Partin, to answer the question, 'Did you talk to Mr. Pierce of Local 612,' after the said witness, Partin, declined to answer on the grounds of self-incrimination.

* * * * * *

"15. For that the trial court erred in sustaining an objection to the following question propounded to the witness, Partin, upon said witness asserting the privilege against self-incrimination: 'Did you talk to any officer of Local 612 during the time you were in Birmingham.'

* * * * * *

"47. For that the trial court erred in its refusal to require the witness Edward Grady Partin, to answer the following question: 'Did you talk to Mr. Pierce of Local 612?' to which the witness answered: 'I decline to answer that on the grounds it might tend to incriminate me.'"

Assignments of Error 12 and 47, as worded, are insufficient in that they do not challenge any action or ruling by the trial court. There was no request made of the trial court to require the witness Partin to answer the questions. See King v. Jackson, 264 Ala. 339, 87 So.2d 623.

Although Assignments of Error 12, 15 and 47 are argued in bulk and Assignments 12 and 47 are inefficacious, we will consider Assignment 15 in that it properly raises a question kindred to the questions sought to be presented by Assignments 12 and 47.—White Dairy Co. v. Sims, 230 Ala. 561, 161 So. 812, and cases cited; Auto-Owners Ins. Co. v. Stokes, 284 Ala. 537, 226 So.2d 320.

Assignment of Error 15 complains of a specific ruling of the trial court, the sustaining of an objection to a question propounded to Partin on cross-examination on the ground that the question called for an answer which might tend to incriminate Partin.

International asserts in its brief that the trial court's action in sustaining the objection resulted in a denial of its right to a thorough and sifting cross-examination of the witness Partin.

In answer to International's contention, the appellee, Mrs. Hatas, says in brief that the action of the trial court in sustaining the objection cannot work a reversal of the judgment below because the ruling of

the trial court merely upheld "Partin's constitutional guarantees against self-incrimination."

Appellee advances another reason in support of the trial court's action made the basis of Assignment of Error 15. Appellee says in effect that the relevancy of the answer called for by the question to which the objection was sustained does not appear from the record. We will consider this contention before we deal with the self-incrimination question.

It is interesting to note that the trial court evidently thought that the question called for relevant testimony because the record shows that he overruled the first objection interposed to the question and did not sustain an objection until it was made to appear that Partin claimed the privilege against self-incrimination.

We entertain the view that the question called for an answer which was altogether relevant in view of Partin's previous testimony, both on direct and cross-examination. As previously shown, Partin testified that he was requested to come to Birmingham to assist in the Bowman Transportation Company strike by Mr. Webb, who was the President of Local 612. Despite such testimony, Partin stated on cross-examination that after reaching Birmingham he did not talk with Mr. Webb because "I wasn't dealing with Mr. Webb." It was then that counsel for International asked Partin on further cross-examination: "Did you talk to Mr. Pierce of Local 612?" "Did you talk to any officer of Local 612 during the time you were in Birmingham?"

International's defense was grounded on the claim that Partin was not in Birmingham in December of 1961 as an agent, servant or employee of International or of its Local 612, nor was he at that time representing either International or Local 612 in furthering the strike against Bowman Transportation Company. Consequently, the question asked Partin as to whether he had talked to any officer of Local 612 during the time he was in Birmingham called for testimony which we think was highly relevant and material to International's defense.

In Coward et al. v. McKinney et al., 277 Ala. 513, 516, 172 So.2d 538, 540, it was said:

> "It is a part of our statute law that every party has the right of cross-examination, thorough and sifting, of the witnesses who testify against him. § 443, Title 7, Code 1940; Sowell v. State, 30 Ala.App. 18, 199 So. 900; Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199.
>
> "In this state, the so-called English rule of cross-examination prevails, that is, the cross-examination is not limited to matters brought out on direct examination of a witness, but extends to all matters within the issues of the case. Madden v. State, 40 Ala.App. 271, 112 So.2d 796, cert. denied, 269 Ala. 697, 112 So.2d 800."

Section 443, Title 7, Code 1940, must be reasonably construed so as not to deprive the trial judge of discretion reasonably exercised to limit the range of cross-examination in respect to collateral and irrelevant matter.—Powell v. Powell, 285 Ala. 230, 231 So.2d 103.

The question to which the objection was sustained did not call for collateral or irrelevant matter and we do not think that the action of the trial court in sustaining the objection to the question can be rested on an exercise of discretion on the part of the trial court to limit cross-examination.

International was entitled to a thorough and sifting cross-examination of Partin on matters about which he could be legally questioned.

So we come to a consideration of the self-incrimination question.

The privilege against self-incrimination afforded by § 6 of the 1901 Constitution of Alabama has been held available to a party in a civil action.—Morris v. Mc-

Clellan, 154 Ala. 639, 45 So. 641; McElroy's The Law of Evidence in Alabama, 2d Ed., Vol. 3, § 373.01. See Ex parte Rice, 259 Ala. 570, 67 So.2d 825. On June 14, 1964, the Supreme Court of the United States in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, held that the privilege against self-incrimination afforded by the Fifth Amendment to the Constitution of the United States applies to state actions. That privilege is available to witnesses in civil lawsuits. See McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158.

In Ex parte Blakey, 240 Ala. 517, 522, 199 So. 857, 861, it was said:

> "It seems to be the universal holding of the courts of last resort, which have had occasion to deal with cases like the one here under consideration, that when a witness declines to answer a question propounded to him by a court of competent jurisdiction, upon the ground that his answer might tend to incriminate him, two principles of law become at once involved, in determining the question of immunity claimed by the witness, and the court must give them both reasonable construction, so as to preserve them both to a reasonable extent. These two principles are: *The state is entitled to the testimony of every citizen, while the citizen is privileged not to accuse himself. Neither of these principles can be entirely ignored and disregarded.*
>
> "It seems to be equally well settled, that, in such cases, when a witness declines to answer a question upon the ground that his answer may tend to incriminate himself, *it is in the first instance the prerogative of the court to consider and decide whether any direct answer to the question can implicate the witness. If it is not apparent such would be the tendency of the answer, the witness is not privileged from testifying.*" (Emphasis supplied)

In sustaining the objection, it can be said that the trial court exercised its prerogative to decide that a direct answer to the question would "implicate" the witness, Partin.

But the question remains, why did the trial court so decide? As we view the record, the only possible theory which could be advanced for saying that it was apparent from the record that a direct answer to the question would have been incriminating is that such an answer might ultimately lead to other testimony which might tend to connect Partin with criminal acts which might have been committed by officers of Local 612 in connection with the Bowman Transportation Company strike.

Partin, however, had already tied himself to the activities of Local 612 in connection with that strike. He did so without any protest or any claim of the privilege against self-incrimination.

The weight of authority seems to support the broad view that a witness who discloses a fact or transaction, without invoking his privilege against self-incrimination, thereby waives that privilege with respect to details and particulars of such fact or transaction.—147 A.L.R. 256. See Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344.

International cites Lockett v. State, 63 Ala. 5. Lockett and one Gantt were jointly indicted for burning the Talladega County jail. Lockett was tried alone. One Richard Cox, who had been confined in a jail cell with Lockett and Gantt, was a State's witness. He gave an account of a "scheme" which had been contrived by several prisoners, including Lockett, Gantt and himself, to burn the jail in order to escape. Cox stated that Gantt actually set fire to the jail and that Lockett did not take any part in the burning except "to hand Gantt some splinters" at Gantt's request, which splinters Gantt used in kindling the fire. On cross-examination Lockett's counsel asked the witness Cox if he did not assist Gantt in kindling the fire which burned the jail.

The trial court thereupon stated to the witness "that he was not bound to answer that question, unless he chose to do so." Cox refused to answer the question.

Lockett was convicted. He appealed to this court, which reversed the judgment of conviction "* * * for the error of informing the witness and holding that he was not bound to answer a relevant question, the answer to which might tend to incriminate him, * * *"

We quote from the opinion in the *Lockett* case as follows:

"An accomplice, who consents to testify for the State, that a defendant committed the act for which he is indicted, can not shield himself from answering any relevant question concerning it, under the rule that he shall not be required to criminate himself. * * *

"*Even in causes between individuals,* where there can be no understanding, express or implied, that the witness should not be prosecuted for an offense of which his testimony might disclose that he was guilty: if, being aware that he is not obliged to answer a question which may incriminate him, the witness does answer it, 'he cannot afterwards take the objection to any further question relative to the whole transaction.' Dixon v. Vale, 1 Car. & P. 278. And in East v. Chapman (2 Car. & P. 570), Abbott, C. J., said to a witness in that situation: 'You might have objected to giving any evidence; but, having given a long history of what passed, you must go on; otherwise, the jury will only know half of the matter.' It can not be tolerated that a person testifying, after stating material facts bearing upon the case, and favorable to one party, shall, when cross-examined in reference to the same subject, decline answering by reason of his privilege not to incriminate himself. Foster v. Pierce, 11 Cush. 437 [59 Am. Dec. 152]; Brown v. Brown, 5 Mass. 320. His obligation to answer, however, extends only to questions concerning the matter he has testified about, and not to those concerning other matters, though they come within the scope of the cause. Chamberlain v. Wilson [Willson], 12 Vt. 491 [36 Am.Dec. 356]; The State v. K———, 4 N.H. 562." (Emphasis supplied) 63 Ala., 10–11.

This cause is between an individual as plaintiff and an individual and unincorporated labor organizations as defendants. The State was not a party. The individual defendant, Partin, was a witness for the plaintiff. He was obviously aware of the constitutional guarantees against self-incrimination. As previously noted, he testified without protest or objection of any kind as to his activities in connection with the Bowman Transportation Company strike. If he said anything during the course of his entire testimony which might incriminate him, it was that part of his testimony which related to his participation in that strike.

Consequently, we do not think that Partin was entitled to refuse to answer questions directed to him on cross-examination relative to his connection, if any, with officers of Local 612, the local which was on strike and which had, according to Partin, through its president solicited his services.

To uphold Partin's claim to privilege in the instance here under consideration would open the way to the withholding of relevant, material facts by permitting a witness to select any stopping place in his testimony. The privilege against self-incrimination presupposes a real danger of legal detriment arising from disclosures. A witness cannot invoke the privilege where the response to a specific question would only disclose details of facts already related without protest. See Rogers v. United States, *supra*, and Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.

In our opinion the fact that Partin did or did not talk with officers of Local 612 would have been of substantial evidentiary value to International, particularly after he denied dealing with the president of that local while in Birmingham. We entertain the view that International was entitled to test on the anvil of cross-examination

the details of Partin's actions while in Birmingham. Such actions might tend to prove or disprove his claim that he was in Birmingham and that he helped in the strike at the request of Local 612 and of Mr. Hoffa.

Appellee cites in support of the trial court's ruling the following cases: Slochower v. Board of Higher Education of New York City, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692; Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997; Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264. Our holding in this case does not, in our opinion, run counter to anything said in any of those cases.

We hold that Assignment of Error 15 is well taken and that the trial court erred to a reversal in sustaining the objection to the following question propounded to Partin on cross-examination: "Did you talk to any officer of Local 612 during the time you were in Birmingham?"

Related in kind to Assignment of Error 15, but involving slightly different subject matter, is Assignment of Error 16, which reads: "For that the trial court erred in sustaining an objection to the following question propounded to the witness, Partin: 'Did you talk to any general organizer of the International Union during that period of time." The "period of time" to which the question refers is that which Partin claims he spent in and around Birmingham during the course of the Bowman Transportation Company strike. We entertain the view that in sustaining an objection to the question set out in Assignment 16, the trial court deprived International of its right to thoroughly cross-examine Partin, upon whose testimony the plaintiff had to rest her claim that Partin at the time of the accident was an agent, servant or employee of International acting within the line and scope of his employment. In our opinion Partin should not have been permitted to evade answering the question on the ground that an answer to the question might tend to incriminate him. The views which we expressed in treating Assignment 15 are applicable to Assignment 16 and we hold that Assignment of Error 16 is well taken and that the ruling made the basis of that assignment constitutes reversible error.

In holding that the rulings of the trial court made the basis of Assignments 15 and 16 were erroneous and constitute reversible error, we have not overlooked the fact that Partin was called to testify by the plaintiff. But in our opinion he was an adverse witness in only a technical sense. He was, indeed, a most willing witness for plaintiff and during his direct examination he did not in a single instance seek to invoke the privilege against self-incrimination. Under the circumstances of this case, we do not think it can be correctly said that Partin was forced to testify in the sense that we should follow the waiver rule sometimes applied to parties who are forced to testify rather than the broader rule applied in some cases where the party testifies of his own volition. See 52 Va.Law Review, No. 2, pp. 322, 328. Also see 14 Stanford Law Review, No. 4, pp. 811–826.

Assignment of Error 17 relates to the action of the trial court in sustaining a general objection to a question propounded to the witness Partin on cross-examination. Partin was asked if it was not "fairly close in time to the time" he went to Birmingham that he placed a call to International's president and allegedly received instructions to go to Birmingham and help out on the strike. We think the trial court might well have allowed the question to be answered, but in view of the extensive examination of the witness on the point, both on direct and cross, we cannot say that the trial court abused its discretion in sustaining the objection.—Seals v. State, 282 Ala. 586, 213 So.2d 645.

Assignment of Error 34 reads: "For that the trial court erred in sustaining objection to the following question propounded to the witness, Partin: 'Who was

with you in that car?'" and Assignment 36 reads: "For that the trial court erred in sustaining objection to the following question propounded to the witness, Partin: 'Two or three days prior to Christmas, in 1961, while you were in Birmingham, I want you to tell me, sir, the names of any officer of any Teamsters local union with whom you talked personally or by telephone on those days?'"

Both assignments relate to rulings made during International's cross-examination of Partin. The assignments are argued separately in International's brief, but we will treat them together in that they are related and the argument made in support of them is substantially the same, that the trial court erred in denying to International the right to a thorough and sifting cross-examination of plaintiff's key witness, Partin.

We have often said that the range of cross-examination rests largely in the trial court's discretion and its rulings thereon will not be revised unless prejudicial error is clearly made to appear.—Davis v. Radney, 251 Ala. 629, 38 So.2d 867, and cases cited; Howell v. Greyhound Corp., 257 Ala. 492, 59 So.2d 587.

But after a careful review of the entire cause, we are constrained to the conclusion that the rulings here presently under consideration limiting the cross-examination of the one witness whose testimony could place liability on International was so prejudicial as to justify a reversal of the judgment of the trial court.

The questions to which the objections were sustained constituted an effort by International to probe the testimony of a damaging and hostile witness concerning the vital issue in International's defense, the validity *vel non* of the claim made by Partin that he acted as an agent for International while he was in and around Birmingham. We feel that International was entitled to wide latitude in its attempt to determine if Partin had any contact during his stay in Birmingham with anyone who could be tied to International or could

give credence to or detract from Partin's assertion that at the time in question he was in Birmingham, working on a strike at the request of Local 612 and International's president, Mr. Hoffa.

We hold that Assignments of Error 34 and 36 are well taken.

Assignments of Error 13, 14, 39 and 46 are all to the effect that the trial court erred in refusing to grant International's motion to strike, exclude or suppress all of Partin's testimony on the ground that rulings of the trial court had deprived International of its right to a thorough and sifting cross-examination of Partin.

We have held that the trial court erred to a reversal in permitting Partin to refuse to answer certain questions propounded to him on cross-examination by counsel for International on the ground that answers to those questions might tend to incriminate him. Consequently, we see no need to consider Assignments of Error 13, 14, 39 and 46.

International sought to show that in 1962 Partin made statements to Hon. Roderick Beddow, Jr., to the effect that in December, 1961, he was in Birmingham on business of a personal nature and was not there on business of Local 612 or of International, as Partin had testified.

When questioned by his counsel outside the presence of the jury, Partin without objection testified that in 1962 he went to the office of Mr. Beddow in Birmingham, where he talked with Mr. Beddow, Jr.; that he was accompanied by a Miss Kelly; that the reason for his visit to Mr. Beddow's office was that the F. B. I. "were trying to establish the fact that I had an accident in Alabama on that date, and they had been to see her to see if I had been in Alabama."

Immediately after the admission of the foregoing testimony of Partin, the following occurred:

"Q. Did you seek legal consultation with Mr. Beddow?

Mr. Bergen [an attorney for International]: We object.

A. I certainly did.

The Court: I think whatever he was advised, that is excluded. The statement that he went to Mr. Beddow's office is admissible.

Q. Did you go there for professional service and advice?

Mr. Bergen: We object.

The Court: I think he is entitled to answer that.

Mr. Bergen: We except.

A. Yes.

Q. And did you get professional advice from Mr. Beddow, Jr., in connection with this wreck?

Mr. Bergen: We object.

The Court: Overrule the objection.

Mr. Bergen: We except.

A. I certainly did."

International's Assignment of Error 44 asserts error of the trial court in overruling its objection to the question, "Did you go there for professional service and advice?" and its Assignment 45 charges the trial court with error in overruling objection to the question last set out above.

In its brief International argues that the questions called for conclusions of the witness and hence the trial court erred to a reversal in overruling the general objections interposed to the questions. We cannot agree. The questions, in our opinion, called for facts, not for legal conclusions. Partin, a mature and worldly individual, was altogether capable of knowing why he went to see Mr. Beddow and of knowing whether he had received from Mr. Beddow that which he said he sought, professional service and advice.

We hold that Assignments of Error 44 and 45 are without merit. In so holding,

we have given no consideration to the fact that the questions were asked and answered outside the presence of the jury.

Assignments of Error 40, 41 and 43 are argued together.

Assignments 40 and 41 read:

"40. For that the trial court erred in refusing to admit into evidence that portion of the testimony of Roderick Beddow, Jr., taken out of the presence of the jury.

"41. For that the trial court erred in refusing to admit that portion of the testimony of the witness Edward Grady Partin taken out of the presence of the jury."

The trial court made several rulings concerning the admissibility of evidence during the course of the examination of Mr. Beddow, Jr., and Partin outside the presence of the jury in regard to whether an attorney-client relationship existed at the time Partin made certain statements to Mr. Beddow, Jr. None of those rulings are separately assigned as error. Apparently they have been lumped together in Assignments 40 and 41. Those assignments are too general to invite review. In Anderson v. Smith, 274 Ala. 302, 303, 148 So.2d 243, 244, it is said:

"Assignments 6 and 7 pertain to certain rulings as to the admission or rejection of evidence, these rulings being referred to in a combined general way and by reference to the pages of the record where such rulings may be found. Such assignments are not sufficient to invite our review in that they do not state concisely the error complained of as required by Supreme Court Rule No. 1. See also Hanson v. Kennady, 40 Ala. App. 161, 112 So.2d 508, and cases therein cited."

In American Casualty Co. of Reading, Pa., v. Devine, 275 Ala. 628, 634, 157 So.2d 661, 666, this court, citing the *Anderson*

case, *supra,* and Supreme Court Rule 1, said:

"Assignment 11 pertains to at least five rulings on admission of evidence over defendant's objection. These rulings are referred to in a combined general way and by reference to the pages of the record where such rulings may be found. Such an assignment is not sufficient to invite review because the assignment does not state concisely the error complained of. * * *"

Assignment of Error 43 reads:

"For that the trial court erred in sustaining objection to the following question propounded to the witness Partin: 'I'll ask you, Mr. Partin, if in late March of 1962, you were in the office of Mr. Roderick Beddow, Jr., in the Massey Building in Birmingham, Alabama, in the presence of yourself and Roderick Beddow, Jr., and you did not say to him in substance that you had had some difficulty or thought you had had some difficulty in Alabama during Christmas of 1961, but that it had no relation to union activities or the Bowman strike; that you were there in Alabama at the time on your own business?"

The objection was sustained on the ground that to require the witness to answer the question would constitute a violation of the attorney-client privileged communication rule.

Section 438, Title 7, Code 1940, reads:

"No attorney or his clerk shall be competent or compelled to testify in any court in this state, for or against the client, as to any matter or thing knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney, * * * but shall be competent to testify, for or against the client, as to any

matter or thing knowledge of which may have been acquired in any other manner."

International contends that any statement made by Partin on the occasion of his visit to the office of Mr. Beddow, Jr., to which we referred above, is not within the attorney-client privilege because Miss Kelly, not Partin, was the client of Mr. Beddow, Jr., and contends further that even if Partin was the client he waived the privilege as to the statements about which he was questioned because such statements were made in the presence of a third party.

In Cotton v. State, 87 Ala. 75, 6 So. 396, and Fuller v. State, 34 Ala.App. 211, 39 So.2d 24, it was held, in effect, that a third person who was present at a conference between an attorney and his client may testify as to facts which came to his knowledge during the conference.

But the holdings in those cases are not apposite to the facts of this case. Here, International was not seeking to elicit from a third person statements made by Partin. International was questioning Partin in regard to statements allegedly made by him to the attorney, Mr. Beddow, Jr., in the presence of the third party.

The rationale behind such cases as Cotton v. State, *supra,* and Fuller v. State, *supra,* is that since a third person is not involved in the relationship between the attorney and his client, the presence of such third party defeats the confidential nature of the conference and thereby the privilege. See Wigmore on Evidence, McNaughton Revision, Vol. VIII, § 2311, p. 599.

Neither that rationale nor the rule which it supports applies when the third person is also a client as to the subject matter discussed in the conference *or has a common interest in the matters discussed.* The majority rule applicable where such a relationship existed at the time of the con-

ference is stated thusly in 141 A.L.R. at p. 562:

"Where two or more persons employ an attorney as their common attorney their communications to him in the presence of each other are regarded as confidential so far as strangers to the conference are concerned, and are privileged as to them. Likewise, where two or more persons interested in the same subject matter are present at a conference with an attorney who represents only one of those present, it has been held that matters discussed at such conference are confidential as to strangers to the conference and accordingly they constitute privileged communications as to such strangers. * * *"

See McElroy, Law of Evidence in Alabama, 2d Ed., Vol. 3, § 392.03, at p. 208, and the Alabama cases there cited.

Partin and Miss Kelly were both interested in a legal sense in the subject matter discussed at the conference with Mr. Beddow, Jr.; hence, the matters discussed at that conference were correctly held by the trial court to be confidential and accordingly constituted privileged communications as to strangers to the conference.

We hold that Assignment of Error 43 is without merit.

Assignments of Error 18 through 26 are argued in bulk.

International says in brief that "Each of these assignments of error relates to the same subject matter: That the plaintiff's witness, defendant, Partin, had been indicted for first degree manslaughter and leaving the scene of an accident on the basis of the identical transaction made the basis of this action and those indictments had been dismissed a few days prior to his testimony in behalf of plaintiff in the trial of this cause."

We do not think that Assignments of Error 18 through 26 are so related that this court can treat the questions presented in them by applying the same argument to each of the assignments.

Some of those assignments are clearly not well taken and we will not undertake a discussion of the others which, if argued separately, would be treated.

But in view of another trial we make the following observations.

We have cases which hold that a question propounded to a witness on cross-examination which sought to affect the credibility of the witness by showing his indictment for, not conviction of, an offense involving moral turpitude were properly disallowed.—Campbell v. State, 182 Ala. 18, 62 So. 57; Watson v. State, 155 Ala. 9, 46 So. 232. See Dean v. Johnston, 281 Ala. 602, 206 So.2d 610; Ross v. State, 139 Ala. 144, 36 So. 718.

But we have held that such evidence is admissible under some circumstances to show bias on the part of the witness.—Wilkerson v. State, 140 Ala. 165, 37 So. 265; Ray v. State, 248 Ala. 425, 27 So. 2d 872. See Stephens v. State, 252 Ala. 183, 40 So.2d 90; George v. State, 27 Ala. App. 196, 169 So. 325.

The existence of the indictment, the fact that it was dismissed or nol prossed, and the circumstances leading up to such action seem to us to be matters which International is entitled to show.

As pointed out in Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141, it is not required in every case, as a condition precedent to any question on cross-examination to show bias, that the witness must first be asked about the state of his feelings. See Adams v. State, 280 Ala. 678, 198 So.2d 255; Nichols v. State, 276 Ala. 209, 160 So.2d 619. We see no reason why such a question had to be asked of Partin as a condition precedent to a question or questions propounded to him on cross-examination to show bias. *Cf.* Adams v. State, *supra*.

We do not feel that the rulings made the basis of Assignments of Error 48 and 49 should work a reversal of the judgment below. Assignment 48 complains of the trial court's action in refusing to admit into evidence certain long-distance telephone bills sent to Local 612 and Assignment 49 asserts error in the sustaining of an objection to a question asked of witness John T. Pierce by International as to whether during November or December, 1961, there were any long-distance calls from Local 612 to Baton Rouge or any other place in Louisiana.

The evidence which would have been afforded by the admission of the telephone bills and a negative answer to the question asked the witness John T. Pierce is so remote and of such small probative value that error, if any, in not admitting such evidence would not justify a reversal. See McElroy, The Law of Evidence in Alabama, 2d Ed., Vol. 1, § 21.01(3), at pp. 16–17; Supreme Court Rule 45.

Assignment of Error 32 complains of the refusal of the trial court on motion of International to require Mr. Bradley, one of Partin's attorneys, to answer this question: "We ask Mr. Bradley if, on or subsequent to the 21st day of September, 1965, he was advised and informed and in turn he advised and informed Mr. Partin that the two indictments referred to had been nol prossed or dismissed?"

When objection was first interposed the trial court stated: "I don't see any objection to that question because that is a matter of fact," meaning, no doubt, that the fact that the indictments had been nol prossed was a matter of record; hence Mr. Bradley could not refuse to answer the question in its entirety because the question included the inquiry as to whether Mr. Bradley had advised and informed Partin that the two indictments had been nol prossed or dismissed.

Later when the witness refused to answer that part of the question "as to whether or not I made communication to Mr. Partin," on the ground that "it comes within the purview of privilege between attorney and client," International moved to require the witness to answer. In response to that motion the trial court responded:

> "The court will have to sustain his objection to it. I think though that I probably would have to go back and say this, that it is immaterial. The matter is wholly immaterial to any issue in this particular case here unless you can show that there was some coercion or reward or inducement or hope thereof resulting from it. * * *"

Later the trial court stated: "The question is a proper question, and the answer that he gave is a proper answer, but the court sustains the objection to the admission of that evidence because it is immaterial."

We do not think that the question called for an answer in violation of the attorney-client privilege because the fact that the indictments were nol prossed was a matter of public record. See generally 97 C.J.S. Witnesses § 284, at p. 810; 58 Am. Jur., Witnesses, § 490, p. 274.

It was not incumbent upon International to show by direct evidence that Partin's testimony was influenced by the fact that the indictments were nol prossed. That fact was a circumstance which the jury was entitled to weigh along with other evidence in evaluating Partin's testimony.

We entertain the view that the question here under consideration called for competent, legal and material testimony and that the trial court erred to a reversal in refusing to grant International's motion to require the witness to answer.

Assignment of Error 27 raises a question very similar to that raised by Assignment 32 and we hold that the trial court erred to a reversal in sustaining objection to the following question asked Partin by International on cross-examination: "Were you informed or advised that the two in-

dictment [sic], which you heard me refer to and which you have seen me handle, had been dismissed or nol prossed?"

Since the fact that the indictments had been nol prossed was a matter of public record, we feel that the trial court erred to a reversal in sustaining objection to this question asked Partin by International on cross-examination: "Did Mr. William C. Bradley, attorney in this case, advise you of this or to this effect last week?" (Assignment of Error 29)

We have dealt with most of the argued assignments of error. In view of what we have said above, we see no reason to further encumber this long opinion.

Because of the errors noted above, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

SIMPSON, MERRILL, HARWOOD and McCALL, JJ., concur.

BLOODWORTH, J., concurs in the result.

HEFLIN, C. J., and MADDOX, J., dissent.

COLEMAN, J., not sitting.

MADDOX, Justice (dissenting).

I would affirm the trial court in this cause. First, I cannot agree that the trial court committed reversible error in refusing to compel the witness, Partin, on cross-examination, to answer questions which Partin claimed might tend to incriminate him. As the majority concedes, the trial court has the right in the first instance to decide whether any direct answer to a question would implicate the witness. While the right of the trial judge to make the determination is not *absolute*, it would appear to me that the trial judge in this case did not abuse his discretion, especially in view of the fact that we do not have a complete transcript of the proceedings and the trial judge was more aware than we of attending circumstances.

It is my opinion that the majority has made the right of an individual not to accuse himself, a right which was placed in our first Constitution, and which has been placed in each successive Constitution, secondary to the right of a party to make a searching cross-examination.

This right not to accuse one's self, as the majority recognizes, is available to a witness in a civil proceeding. It is also available to a witness who is also a party. In Calhoun v. Thompson, 56 Ala. 166 (1876), this Court said among other things:

> "The humane maxim of the law is, that no one is bound to accuse himself. A witness, though a party to the suit, cannot be compelled to answer any question, the answering of which may expose, or tend to expose, him to a criminal charge, or to any kind of punishment."

In Ex parte Blakey, 240 Ala. 517, 199 So. 857 (1941), cited by the majority, there is a good compilation of the law of this state and other jurisdictions concerning the right of a witness to refuse to answer questions in a civil proceeding when the witness makes claim that the answer to the question might tend to incriminate him.

I think Lockett v. State, 63 Ala. 5 (1879), cited by the majority for the principle that the right of a witness not to accuse himself can be waived is distinguishable. The witness in *Lockett* was an accomplice and had voluntarily testified for the state about matters, which without question, had *implicated* the witness. I believe this Court was very careful to point out in *Lockett* that the rule that a witness waives his right not to accuse himself extends only to questions concerning *matters about which the witness has already testified.* This Court there said, "For the witness is an *accomplice,* who is allowed to give evidence in favor of the state, with the express under-

standing that he is to *disclose his own guilt.*"

The narrative of Partin's testimony which is set out in the majority opinion, in my judgment, does not necessarily show that Partin might be guilty of *any crime.* Therefore, since he had given no evidence on direct which might *tend to incriminate him,* the question of waiver does not arise, as I view it. As I understand the testimony of Partin, it tended to establish that he was in Birmingham and vicinity to assist in a strike at the request of appellant's president and "other gentlemen" in Birmingham. I agree that it is difficult to see how, having admitted that he was in Birmingham at the request of individuals, Partin declined to answer questions seeking the names of individuals he talked to in Birmingham, (he did admit talking to a Mr. Webb of the Birmingham Local over the telephone), but I think we engage in speculation when we assume that the answers *would not* tend to incriminate Partin.

I respectfully feel the majority engages in speculation when it asks, "Why did the trial court so decide," that an answer would implicate Partin and further states, "If he (Partin) said anything during the course of his entire testimony which might incriminate him, it was that part of his testimony which related to his participation in that strike." How do we know this is a fact? The right to claim the privilege first rests with the witness who should know better than anyone else whether the answer to a specific question might tend to implicate him with some criminal charge. When the trial court refuses to compel a witness to testify, as it did here, I think our cases say that this is the prerogative (right) of the court. If Partin had voluntarily testified that he and "other men" in Birmingham had entered into a conspiracy to commit some crime, without question, *Lockett,* supra, would apply and he could not refuse to name people he had talked to, having waived his right to claim the privilege by reason of the fact that he had testified without protest to facts which would have obviously been incriminating. But those are not the facts of this case. They were the facts of the *Lockett* case, and that is the reason I think *Lockett* disinguishable.

In view of what I have said, I do not believe reversible error is shown by the action of the trial court in refusing to compel Partin to answer questions to which Partin claimed a right not to incriminate himself.

The majority also predicates reversible error upon the trial court's action in sustaining objection to questions propounded to Partin which sought to determine who was in the car with him, and "the names of any officer of any Teamster's local union" with whom he had talked while in Birmingham. The majority correctly states the rule that the range of cross-examination rests largely in the trial court's discretion and its rulings thereon will not be revised unless prejudicial error is *clearly made to appear*, but then concludes that prejudicial error *clearly appears* in this case. The question, "who was in the car" is certainly quite general and is not limited to time and place. The question asked Partin about the names of individuals in any local union he had talked to was obviously repetitious.[1] Therefore, I fail to see how prejudicial error *clearly appears* as a result of the trial court's action in sustaining objections to the two questions.

1. "Q Two or three days prior to Christmas, in 1961, while you were in Birmingham, I want you to tell me, sir, the names of any officer of any Teamsters local union with whom you talked personally or by telephone on those days? "MR. BRADLEY: May it please your Honor, I object to that. It is repetitious. I can recall having gone over it at least twice by Mr. Bergan, and it has no bearing on this particular case. THE COURT: Sustain the objection. MR. PRUITT: We except. MR. BERGAN: I apologize; I'm not sure I asked this question. If I have asked it, if somebody will refresh my recollection, I will withdraw it."

Neither do I feel that the trial court committed *reversible error* in refusing to require Mr. Bradley, one of Partin's attorneys, to testify that he had advised and informed Partin that two indictments against Partin had been nol prossed.

Appellant states in brief:

"Had appellant not been erroneously denied the right to develop this [that he had been advised by his attorney that the indictments had been nol prossed and whether Partin was advised that the indictments might be reinstated], it may have been presented with the opportunity to exercise its right to *impeach* Partin by both his own testimony, that of Bradley, and others with proof of the facts and details of a collusive agreement whereby Partin was to enjoy immunity from criminal punishment and financial loss alike."

Appellee states in brief:

"Not once did the appellant ask Partin about any deals with the plaintiff. Not once did appellant question Bradley, Partin's lawyer, about any deal with anybody."

Appellee's statement seems to be a fair assertion of what happened.

Without setting out extensive portions of the record and unduly lengthening this dissenting opinion, I would point out that during the trial of the case and during argument on motion for new trial, it affirmatively appears that the trial judge told appellant's attorneys that they would be permitted to question Partin "whether it is not a fact that he was told that, if he did not come to Livingston to testify in this case, those indictments would be reinstated or that another indictment would be returned by the Grand Jury against him." The record before us, insofar as I can determine, does not show that this question which the Court told counsel was permissible was ever asked. On motion for new trial the appellant argued that it determined *after* the trial that the plaintiff Hatas had written a letter to the Circuit Solicitor before the trial of the case requesting that the indictments against Partin be dismissed. There is no evidence in the record to which our attention had been directed which shows that appellant's counsel asked Hatas if there was any agreement between her and Partin that if Partin would testify in the case she would request that the indictments be dismissed. In any event, the record shows that the trial judge stated at the hearing on the motion for new trial that evidence that the indictments had been dismissed was before the jury and that appellant's attorneys argued to the jury that Partin testified in the case for the plaintiff because the indictments against him had been dismissed. I think, therefore, appellant had the benefit of what it now claims to be error to reverse. Consequently, I fail to see how error, if any, sufficient to cause a *reversal* is made to appear. Error to reverse must be prejudicial.

Additionally, as I understand the law of Alabama, communications between attorneys and their clients are privileged. The majority says that when the attorney *advises* his client about a matter which is a matter of public record that the privilege must fall. Our statutory mandate is to the effect that no attorney shall be competent to testify about "advice or counsel" given to his clients. Title 7, § 438, Code of Alabama, 1940 (Recomp.1958). It is interesting to note that the question objected to asked the attorney if he had "advised and informed" Partin that the indictments had been dismissed. I would give force to the statute as, in my judgment, it is written.

The majority, as I understand the opinion, further says that the fact that an indictment had been returned and nol prossed against Partin was admissible in this proceeding to show interest, bias or prejudice on the part of Partin. I do not necessarily disagree with this holding, but I think it completely inapplicable in this case. As already pointed out, the trial judge stated at the hearing on the motion for new trial

# 372

that evidence of the dismissal of the indictments was before the jury and unquestionably counsel admitted that argument was made before the jury that Partin testified as he did because the indictments against him had been dismissed.

Summarizing and concluding, I do not believe that reversible error has been shown by the appellant and I would affirm the judgment of the lower court.

HEFLIN, C. J., concurs.

## ON REHEARING

BLOODWORTH, Justice (dissenting):

At the general conference of the court when the opinion of Mr. Justice Lawson was presented, I concurred in the result. I did not indicate the reason for my concurrence. I wish to do so now since I have decided to dissent.

I concurred in the result of reversal solely because I believed that the trial court committed reversible error in refusing to compel witness Partin on cross-examination (after he claimed the privilege against self-incrimination) to answer questions concerning whether he had talked " * * * to Mr. Pierce [or] * * * to any officer of Local 612 during the time you were in Birmingham?"

I have now become convinced that there was no reversible error in this ruling by the trial court and I would grant the application for rehearing, withdraw the original opinion, and render a decision affirming the judgment of the trial court.

The opinion of the majority authored by Mr. Justice Lawson is, in the words of a recent writer, "brilliantly written. It demonstrates laborious and penetrating research. It is most persuasive." (This writer was previously persuaded.) But, I cannot concur in its conclusion as I have stated.

I most respectfully dissent.