199 So. 857

### Ex parte BLAKEY.

### 3 Div. 320.

Supreme Court of Alabama.

Jan. 23, 1941.

Thos. B. Hill & Wm. Inge Hill and Steiner, Crum & Weil, all of Montgomery, for petitioner.

Jack Crenshaw, S. D. Cater, C. M. Pinkston (as members of Commission originally appointed), Fred S. Ball, Jr., Fontaine M. Howard, Jr., and Sol E. Brinsfield, Jr. (as successors to original Commission), all of Montgomery, amici curiae.

KNIGHT, Justice.

Original petition for writ of certiorari addressed to this court by Frank Blakey to review and revise an order or judgment of the Circuit Court of Montgomery County, directing and requiring the petitioner to answer certain questions propounded to him by a commission appointed by the said court "to investigate the unlawful practice of the law in the Fifteenth Judicial Circuit of Alabama," said circuit being composed wholly of Montgomery County, Alabama.

The proceedings had their origin in the appointment by the Judges of the Fifteenth Judicial Circuit of a commission, consisting of three attorneys practicing at the Bar in said circuit, to investigate all complaints of the practice of the law in said circuit by persons, "natural or artificial, not being thereunto licensed." In appointing this commission to make said investigation, the said judges proceeded under Rule A, adopted by the Board of Commissioners of the State Bar of Alabama, and approved and adopted by the Supreme Court of Alabama on October 22, 1938.

Subsections (c), (d), (e), (g) and (h) of said Rule A are as follows:

"(c) Such commission shall make its report of testimony, evidence and findings, together with its recommendations in each case, to the judge or judges from whom it receives its appointment.

"(d) Any commission duly appointed under this Rule may procure the attendance of witnesses before it by subpoena, which shall be issued by the clerk of the circuit court upon the request of the commission or the chairman thereof; such commission shall have the power to examine witnesses under oath and compel their attendance and the production of books, papers, documents and other writings necessary or material to the inquiry; such commission, however, shall have no power to compel any person examined by it to give testimony or to produce books, records or other documents which may tend to incriminate him; and any witness or other person who shall refuse or neglect to appear in obedience to such subpoena, with or without duces tecum, or who shall refuse to be sworn or testify or produce books, papers, documents or other writings demanded, shall be liable to attachment upon application to any judge of any circuit court for the circuit or county where the investigation is conducted as in cases of contempt.

"(e) Any person sought to be examined by such commission shall have notice and opportunity to be heard, to introduce evidence, and to examine witnesses called concerning him, together with the right to be

represented by counsel. He shall also have the right to require the clerk of the circuit court to summon witnesses to appear and testify or produce books, papers, documents or other writings necessary or material to such examination in like manner as above provided."

"(g) In the event that the commission shall determine that any complaint before it for investigation is well founded, it shall forthwith submit its report, together with a transcript of the testimony taken and evidence adduced, to the judge or judges of the circuit court, with recommendations for such further action as may be deemed advisable by the commission.

"(h) Investigation, reports and findings by the commission shall not be docketed or recorded in the public records, but are intended to aid the several courts of the State in investigating complaints against persons, natural or artificial, engaged in the practice of the law not being thereunto licensed. Nothing herein shall be construed as depriving the several circuit judges of their authority to make such independent investigations of complaints as they may deem advisable."

The said commission, so appointed by the Judges of the Fifteenth Judicial Circuit, pursuant to the authority vested in them under their said appointment, and by said Rule A, undertook to investigate the activities of one W. L. Macey, who was charged by the Grievance Committee of the Montgomery County Bar Association of engaging in the practice of the law in said circuit, without being "thereunto licensed." To that end, the commission met on February 24, 1940, and called before them two witnesses, Frank Blakey and William M. Blakey, and after said witnesses had been duly placed under oath, certain questions were propounded to each of said witnesses, seeking to show that the said W. L. Macey was, and had been, engaged in the unauthorized practice of the law in said circuit. The said Frank Blakey refused to answer certain of the questions propounded to him, basing his refusal upon the ground that his answers might tend to incriminate himself.

On March 6, 1940, the commission, deeming that it was entitled to have the said Witness Frank Blakey answer the said question, made application to the Judges of the Circuit Court of Montgomery County for an attachment against the said Frank Blakey, setting out therein the proceedings had before them, together with the ques-

tions propounded to said witness, and his declination to answer the same and his reasons therefor.

The record shows that on the filing of said application, an order was made setting said application for hearing before the court on Thursday, March 14, 1940, and directing that a copy of the application of said commission, together with a copy of the order setting the same for hearing, be served upon the said Frank Blakey (and William M. Blakey). Both accepted service of the order and of the application.

We may here state that William M. Blakey, after the court had directed him to answer the questions, complied with the order, and he is not now before this court in this proceeding. We shall, therefore, have no occasion hereafter to mention him in the further discussion of this case.

On March 14, 1940, the said Frank Blakey, through his attorneys, filed an answer to the application of the commission for writ of attachment against him, in which he admitted that he had been subpoenaed as a witness before said commission in connection with its investigation of an alleged complaint filed with said commission against one W. L. Macey; that he was duly placed under oath; that numerous questions were pronounced to him as shown by the transcript of testimony filed in the cause; that he admitted he declined to answer certain questions propounded to him upon the hearing before said commission, "all as shown and indicated by the transcript"; and that his refusal to answer said questions and each of them was based upon the ground that the testimony sought to be elicited *"might tend* to incriminate" him. In short, he denied that he was in contempt of court for his refusal to answer said questions.

Upon the hearing of said application of the commission for writ of attachment, the court held that the said Frank Blakey must answer certain of the questions propounded to him by the said commission. The questions which the court held that the witness, Frank Blakey, petitioner here, must answer appear in the report of the case. In reaching the conclusion that said witness, petitioner, should answer the designated questions, the court determined that answers to said questions would not tend to incriminate the witness.

The court's judgment or decree further recited: "If, upon being advised of this decision of the court, the two witnesses"

(William M. Blakey and Frank Blakey) "shall elect to answer the questions required to be answered, within fourteen days from this date, then no writ of attachment and adjudication of contempt will be made. If, on the other hand, the witnesses decline to answer the questions hereinabove required to be answered, a writ of attachment will issue against them, commanding their confinement until said questions are answered."

At the argument the writer was somewhat inclined to the view that the foregoing judgment was not such a final judgment or deliverance of the court, or of the judges of the court, as would support a review here by certiorari, but, upon further reflection, he is convinced that the order will support certiorari to review the ruling of the lower court in this case.

In the case of Ex parte Wheeler, Judge, 231 Ala. 356, 165 So. 74, the court held that: Common law certiorari was the proper mode to review and revise a judgment of the circuit court in contempt proceedings, where the record disclosed a want of jurisdiction, or an error of law in holding that to be contempt which in law is no contempt, but the exercise of a lawful right.

The case of Ex parte Boscowitz, 84 Ala. 463, 4 So. 279, 5 Am.St.Rep. 384, involved a supposed case of contempt by a witness who had refused to answer a certain question upon the ground that his answer might tend to incriminate him. The facts were set out in the judgment, and we held the case reviewable here—by common law certiorari.

So we hold the present case, on the petition and record accompanying it, and made a part of the petition, is reviewable here.

The Act of the Legislature of Alabama, 1931, p. 606, defining the practice of the law, requiring a license for practice of law, and providing penalties for violation of the act reads, so far as here pertinent:

"Section 1. Only such persons as are regularly licensed have authority to practice law.

"Section 2. For the purposes of this Act, the practice of law is defined as follows: Whoever, (a) In a representative capacity appears as an advocate or draws papers, pleadings or documents, or performs any act in connection with proceedings pending or prospective before a court or a justice of the peace, or a body, board, committee, commission or officer constituted by law or having authority to take evidence in or settle or determine controversies in the exercise of the judicial power of the State or subdivision thereof; or, (b) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advises or counsels another as to secular law, or draws or procures or assists in the drawing of a paper, document or instrument affecting or relating to secular rights; or, (c) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, does any act in a representative capacity in behalf of another tending to obtain or secure for such other the prevention or the redress of a wrong or the enforcement or establishment of a right; or, (d) As a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense; is Practicing Law. Nothing in this section shall be construed to prohibit any person, firm or corporation from attending to and caring for his or its own business, claims or demands; nor from preparing abstracts of title, certifying, guaranteeing or insuring titles to property, real or personal, or an interest therein, or a lien or encumbrance thereon.

"Section 3. Any person, firm or corporation who is not a regularly licensed attorney who does an act defined in this Act to be an act of practicing law, is guilty of a misdemeanor, and on conviction must be punished as provided by law. And any person, firm or corporation who conspires with, or aids and abets, another person, firm or corporation in the commission of such misdemeanor must, on conviction, be punished as provided by law."

It will be observed that this act, by its express terms, brings within its prohibitory and penal provisions not only the principal who violates this law, but also "Any person, firm or corporation *who conspires with, or aids and abets,* another person, firm or corporation in the commission of such misdemeanor."

In determining whether the petitioner was within his rights in refusing to answer the questions which the order sought to require him to answer, we have not lost sight of the "aiding and abetting" clause of said Act. These terms—aid and abet—and their scope, have many times been con-

522

sidered by this court, and as to their meaning there can be no misunderstanding, either by the profession or by laymen. Jones v. State, 174 Ala. 53, 57 So. 31; Morris v. State, 146 Ala. 66, 41 So. 274.

The benevolent maxim of the law, invoked in this case, by the witness-petitioner, "that no one is bound to accuse himself," is of most ancient origin, and was imbedded in the first Constitution of this State, Constitution 1819, as Section 10 of our Declaration of Rights, and is found in our present Constitution as Section 6 of our Bill of Rights.

■ It seems to be the universal holding of the courts of last resort, which have had occasion to deal with cases like the one here under consideration, that when a witness declines to answer a question propounded to him by a court of competent jurisdiction, upon the ground that his answer might tend to incriminate him, two principles of law become at once involved, in determining the question of immunity claimed by the witness, and the court must give them both reasonable construction, so as to preserve them both to a reasonable extent. These two principles are: The state is entitled to the testimony of every citizen, while the citizen is privileged not to accuse himself. Neither of these principles can be entirely ignored and disregarded.

■ It seems also to be equally well settled, that, in such cases, when a witness declines to answer a question upon the ground that his answer may tend to incriminate himself, it is in the first instance the prerogative of the court to consider and to decide whether any direct answer to the question can implicate the witness. If it is not apparent such would be the tendency of the answer, the witness is not privileged from testifying.

On the trial of Aaron Burr, In re Willie, 25 F.Cas. pages 38, 39, No. 14692e, which involved the refusal of a witness to answer a question upon the ground that he might thereby incriminate himself, Chief Justice Marshall. declared the applicable doctrine to be: "When two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded. They

are believed both to be preserved to a reasonable extent, and according to the true intention of the rule and of the exception to that rule, by observing that course which it is conceived courts have generally observed. It is this: When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be."

In The Queen v. Boyes, (1861) 1 B. & S. 311, 329, 330, Cockburn, C. J., in speaking for the court, said: "Further than this, we are of opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice. The object of the law is to afford to a party, called upon to give evidence in a proceeding inter alios, protection against being brought by means of his own evidence within the penalties of the law. But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice."

These statements of the law were quoted with approval by Justice McReynolds in speaking for the United States Supreme Court, in Mason et al. v. United States, 244 U.S. 362, 37 S.Ct. 621, 622, 61 L.Ed. 1198. And Justice McReynolds further observed in the Mason case, supra, that "The constitutional protection against self-incrimination 'is confined to *real danger*, and does not extend to remote possibilities out of the ordinary course of law,'" citing Heike v. United States, 227 U.S. 131, 144, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas.1914C, 128; Brown v. Walker, 161 U.S. 591, 599, 600, 16 S.Ct. 644, 40 L.Ed. 819. [Italics supplied.]

This court, in Calhoun v. Thompson, 56 Ala. 166, 28 Am.Rep. 754, held in an opinion by Chief Justice Brickell: "A witness, though a party to the suit, can not be compelled to answer any question, the answering of which may expose, or tend to expose him, to a criminal charge, or to any kind of punishment.—2 Phill.Ev. 929; 1 Green.Ev. § 451. In the first instance, it is the province of the court to determine whether any direct answer to the question proposed will furnish criminating evidence against the witness. If it is not apparent such would be the tendency of the answer, the witness is not privileged from testifying. While it is of the highest importance to protect the witness from self-crimination, it is also of importance that the privilege the law extends to him should not be perverted to the suppression of evidence which can be safely given.—2 Phill.Ev. 933. * * *"

The holding in the Calhoun case, supra, was reaffirmed in the later case of Ex parte Boscowitz, 84 Ala. 463, 4 So. 279, 5 Am.St.Rep. 384.

■■ We have, in the light of the foregoing decisions, Federal and State, carefully considered each of the questions which the lower court ordered petitioner to answer, and fail to see that a direct answer to any of the questions, in the ordinary operation of law, in the ordinary course of things, could or would tend to incriminate the witness. We can see no real or appreciable danger of self-incrimination in any answers that the petitioner-witness may make to said questions. The supposed danger is highly imaginary, not probable, and in our opinion the claimed immunity cannot be allowed to prevail over the right of the state and the court to have the testimony sought to be elicited from the said witness. That the answers may incriminate the employer of the witness is, of course, no concern of the witness.

■ Imaginary, or improbable danger of self-incrimination will not be allowed to obstruct the orderly and due administration of the law. Such would be the inevitable result, if the court, in this case, should sustain the contention of the petitioner.

The court below was of the opinion that the answers to the questions propounded to the petitioner by the commission would not tend to incriminate him, and we find ourselves in full accord with the lower court.

It, therefore, follows that the judgment of the Circuit Court of Montgomery County is due to be affirmed, and it is so ordered.

Affirmed.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.