This is a divorce case. *Page 1124 
The wife appeals, contending the trial court erred in its award of periodic alimony, alimony in gross, division of property, and in its failure to award attorney's fee. Additionally, the wife, through able counsel, contends that the trial court erred concerning certain "evidentiary" matters.
After careful review of the record and after careful consideration of the presumptions accorded the learned judge's decree, this court affirms in part and reverses and remands in part.
The record in pertinent part reveals the following: The parties to this action had been married for twenty-four years. Three children were born of this union. At the time of the divorce all but one of the children had reached the age of majority.
At the time of the divorce, the husband was forty-four years old and was apparently in good health. He had a bachelor's degree in economics and a master's degree in banking and finance. The record indicates that the husband has been in banking for most of his professional life. He presently serves as president of the First Alabama Bank of Huntsville.
The wife was forty-six years old at the time of the divorce and also was apparently in good health. The wife is college educated with a degree in education. During the early years of the marriage she taught school while the husband finished his education. For the majority of the time of this marriage, the wife has not worked outside the home. At the time of the divorce the wife was working at a women's apparel shop for minimum wage.
The husband initiated this divorce action, alleging in his complaint that there was an incompatibility of temperament and an irretrievable breakdown of the marital relationship. The husband's testimony revealed that financial problems that he and his wife had experienced led to this divorce action. The husband specified that the reason they had experienced such problems was the wife's overspending and he offered evidence tending to support this.
Subsequent to the husband's complaint, the wife filed a counter-complaint for divorce. As a reason for the divorce the wife alleged that the husband had committed adultery since the marriage of the parties. At trial the wife introduced evidence tending to support this allegation.
In a pretrial order of May 28, 1981, the trial court, pursuant to rule 53, ARCP, appointed a master to report to the court upon such matters as the assets, liabilities, income, personal property, real property, and equitable interests of the parties. According to the master, the husband's total income for 1979 was $70,014. The husband disputes this finding to the extent of approximately $8,000. For 1980 the master found that the husband's total income was $84,040. The husband disputes this finding to the extent of approximately $11,000. The husband's projected income for 1981 was $86,231. For 1979 the master found that the wife's total income was $932; for 1980 the master found that her total income was $2,227; for 1981 the wife's income was projected to be $5,676. The findings regarding the wife's income were not disputed at trial.
The parties entered this marriage with very few assets. Consequently, most of the parties' assets were acquired during the marriage and, since the wife did not work outside the home, most of the assets were acquired by the husband. After deducting the value of a farm that was sold by the husband after the master's report was compiled, the total value of the couple's estate, according to the master, was $620,325. Included within the estate was $2,267 in cash; securities owned by the husband and valued at $22,429; two jointly owned automobiles with a combined value of $10,000; furniture and personal property jointly owned by the parties and valued at $105,000; a jointly owned residence valued at $131,500; a one-tenth undivided interest in an apartment complex owned by the husband and valued at $303,461; the husband's profit-sharing plan valued at $42,976, and the cash surrender value of the husband's life insurance which, at the time of the divorce was $2,692. The husband did not dispute any of *Page 1125 
these valuations except the value placed upon his one-tenth interest in the apartment complex. At trial the husband introduced evidence that the one-tenth interest was more properly valued at $120,000 to $150,000.
Adjusting for the sale of the farm, the master found the parties' total debts plus accrued interest to be $160,211. Included within this total debt was a $49,748 home mortgage for which both the husband and wife were liable, an $82,830 debt representing principal and interest on a loan taken out by the husband to purchase the one-tenth interest in the apartment complex, and a $7,153 debt representing principal and interest on two loans taken out by the husband apparently for the purpose of meeting miscellaneous expenses. Also included within the total debt were charge account bills, lawyer's fees, medical expenses, and insurance payments. The total amount owing for the foregoing services and expenses was $20,480.
After considering the evidence heard ore tenus along with the exhibits admitted into evidence, the trial judge concluded that the parties should be divorced for incompatibility of temperament.
In pertinent part the divorce decree provided that the wife should have custody of the minor child. The husband was required to pay $450 per month as child support until the child reached majority or was otherwise emancipated. The husband was also required to provide the minor child with medical insurance until she reached majority or was otherwise emancipated. Additionally, the husband was required to keep in force and effect a minimum of $75,000 of insurance on his life for the use and benefit of all the children born of this marriage. This insurance must be maintained until the minor child reaches the age of nineteen.
The trial judge provided for the wife as follows: As alimony in gross, the wife was awarded $15,000. The trial judge stated in the decree that he had purposely increased this award in order to provide funds for the payment of the wife's attorney's fees.
As periodic alimony, the husband was required to pay $750 per month through November 1, 1985 and $350 per month from November 15, 1985 to November 1, 1989. So long as the husband was obligated to pay periodic alimony he was required to keep in force and effect with the wife as beneficiary $50,000 worth of insurance on his life.
The trial judge divided the property as follows: The wife was awarded the parties' residence and the responsibility for the residence mortgage. The wife was also allowed to retain the majority of the household goods and furnishings. The household goods the husband received consisted mainly of furnishings that had been in his family and those that had been given to him. Each party was awarded an automobile. The remainder of the assets were awarded to the husband.
Additionally, the husband was required to pay the outstanding balances on such items as charge accounts, automobile insurance and medical bills. The husband was also responsible for the debts other than the mortgage that had been incurred by him. The parties were required to pay their own attorney's fees.
As stated earlier, the wife contends on appeal that the trial judge erred in his award of periodic alimony and alimony in gross, in his division of property, and in his failure to award attorney's fees.
Considering the award of periodic alimony in light of the other provisions of the divorce decree, this court finds the amount of periodic alimony to be inadequate. In making such an award the learned trial judge abused his discretion.
In considering the issues raised by the wife this court must be mindful that the award and amount of periodic alimony and alimony in gross, the division of property, and the allowance of attorneys' fees are all matters within the sound discretion of the trial judge who will not be reversed absent a plain and palpable abuse of that discretion. Fitts v. Fitts, 283 Ala. 369, 217 So.2d 81 (1968); Armstrong v. Armstrong, 391 So.2d 124
(Ala.Civ.App. 1980). *Page 1126 
The exercise of this discretion, however, is judicial and not arbitrary and is reviewable on appeal. Mack v. Mack,389 So.2d 1156 (Ala.Civ.App. 1980).
Though each case must be decided based upon its own facts and circumstances, there are certain factors that the trial judge should consider in exercising his discretion. Among these factors are the following: the financial circumstances of the parties; the length of the marriage; the source of their common property; the parties' ages, sex and health; the parties' future prospects; the parties' standard of living during the marriage and their potential for maintaining or exceeding that standard after the divorce; and, where appropriate, the fault of the parties. Makar v. Makar, 398 So.2d 717 (Ala.Civ.App. 1981); Reynolds v. Reynolds, 376 So.2d 732 (Ala.Civ.App. 1979). I
As stated above, the circumstances of this case viewed in light of the foregoing factors reveal that the learned trial judge abused his discretion in the award of periodic alimony. The present and future prospects of the parties to this marriage are grossly disparate. The husband is relatively young, healthy, and well educated and has a very good job as president of a bank. From a financial standpoint, his future looks very bright. There is every indication that he will be able to continue to enjoy a high standard of living after the divorce.
The wife's future, however, is not as bright. Though she had obtained a teacher's certificate and had taught school during the early years of the marriage, for most of this twenty-four year marriage the wife had chosen to remain at home and maintain the household. During the time the wife was working as a homemaker her teacher's certificate expired and the testimony indicated that it would be difficult and time consuming to get it renewed. For the last few years the wife has worked at a women's clothing shop for minimum wage. Though she is healthy and well educated she apparently has no readily marketable skills. Thus there is little prospect that the wife will find a more lucrative position in the near future. Additionally, it is highly unlikely that she will ever find a position that will allow her to maintain the standard of living she was accustomed to during her marriage.
The divorce decree required the husband to pay $750 per month as periodic alimony for the four years from 1981 to 1985. For four years thereafter the husband must pay the wife $350 per month as periodic alimony. The wife's net pay from her minimum wage job was $400. Thus during the four years from 1981 to 1985 the wife would have $1,150 per month available to her to meet expenses. From this amount the wife must pay the residence mortgage of $550 per month. This leaves her but $600 per month from which she must maintain a $131,500 home and surrounding property including a swimming pool, pay utility bills, buy groceries and clothing, maintain the car and meet medical expenses. We also note that in actuality the wife would have less than $1,150 per month because she must pay taxes upon the alimony payments she receives from her husband.
The husband, on the other hand, testified that after mandatory deductions his salary as president of the First Alabama Bank of Huntsville was $1,800 bi-weekly or $3,600 a month. In addition to his salary as bank president the husband receives dividend income and also has access to profit sharing funds. The husband's projected dividend income for 1981 was $1,164. Regarding the profit sharing plan, the master found that, in 1979, $8,016 was contributed to the plan; in 1980, $9,591 was contributed to the plan; and, in 1981, $14,792 was the projected contribution to the plan. These contributions are invested and earn interest and are available for distribution two years after contribution. The master found that the total value of the profit sharing plan was $42,976. Additionally, the husband received a cash bonus of $3,000 in both 1979 and 1980 and such a bonus was also projected for 1981. Finally, the husband is covered by insurance through his employer's group *Page 1127 
plan and does not have to spend his own funds for such coverage.
In summary, the husband is in a much better financial position than the wife and there is every indication that the husband's earning ability will continue to increase in the coming years. Thus, in the opinion of this court the husband is in a better position to pay the $550 per month home mortgage. In reaching this decision we acknowledge that we are aware that the husband is already responsible for repayment of the funds borrowed to purchase the one-tenth interest in the apartment complex as well as the repayment of two miscellaneous loans and payment on certain accounts payable. We are also aware, however, that the husband's obligation to pay $450 as child support will expire in May, 1983.
By requiring the husband to assume the home mortgage the periodic alimony award to the wife will more nearly serve its intended purpose which is to provide for the current and continuous support of the wife. Dees v. Dees, 390 So.2d 1060
(Ala.Civ.App. 1980).
Put another way, upon remand the trial court should order that the husband be required to pay the home mortgage. The payment of the mortgage may be accomplished by making the monthly payments or as otherwise directed by the trial court.
With the foregoing adjustments, this court finds no abuse of discretion in the trial court's award of alimony in gross and division of property.
A review of the divorce decree and the trial transcript reveals that the trial judge attempted to make a property division and an award of alimony in gross that would not only be roughly equal in value but would also reflect the needs and expertise of the parties. To the wife, who had only a minimum wage job and no immediate prospects for a better job, the trial judge awarded the residence, the majority of the furnishings within the residence and an automobile. Additionally, the wife received $15,000 as alimony in gross though we recognize that part of this amount was for attorney's fees. To the husband, who had a good job and was an experienced businessman, the trial judge specifically awarded him some home furnishings which apparently had a special value for the husband and the decree allowed him to retain his one-tenth interest in the apartment complex, his interest in the profit sharing plan, the securities, and an automobile.
A property division must be equitable and graduated according to the nature of the particular case. Mack v. Mack, supra. A review of the record reveals nothing within the nature of this case that would lead this court to conclude that the above property division was inequitable.
Regarding the division of property, the wife contends that the trial judge erred in valuing the one-tenth interest in the apartment complex at $120,000 rather than accepting the $303,461 valuation placed upon the interest by the master. Her contention appears to be that had the court accepted the master's valuation, it would have become apparent that the wife's share of the estate was inequitable. Suffice it to say that even had the trial court erred in not accepting the master's valuation, that in itself would not necessarily require this court to conclude that the property division was inequitable.
This court, likewise, finds no merit in the wife's contention regarding "failure" to award attorney's fees. The trial judge specifically noted in the divorce decree that he had intentionally increased the award of alimony in gross to cover attorney's fees. Though this court should not be understood as condoning this method of providing for attorney's fees, under the circumstances of this case we cannot hold that the trial judge abused his discretion in providing for attorney's fees in this manner.
 II
As noted earlier, the wife also contends that the trial court erred to reversal in certain evidentiary matters involving the disclosure of settlement offers to the trial judge and the invocation of the privilege against self incrimination by the husband *Page 1128 
and another witness when being questioned about possible acts of adultery. This court finds no merit in either of these contentions.
It is well-settled that offers of compromise are not proper evidence. See generally, C. Gamble, McElroy's Alabama Evidence § 188 (3d ed. 1977). The wife contends that the trial judge breached this principle by requiring disclosure of the respective party's settlement offer prior to the conclusion of this action. We find no merit in this contention for three reasons. First, the record does not reflect any instance where the trial judge compelled disclosure of settlement offers nor does it reflect that any settlement offers were disclosed. Appellate courts are bound by the record and generally will not consider matters outside the record. American Benefit LifeInsurance Co. v. Ussery, 373 So.2d 824 (Ala. 1979). Furthermore, an assertion in a party's brief cannot be taken to supplement the record. Mauldin v. Mount Hebron United MethodistChurch, 289 Ala. 493, 268 So.2d 770 (1972). Second, even if the trial court did require the disclosure of settlement offers, the record does not reveal that there was any objection to such disclosure. A party who fails to object to a matter at trial may not raise such matter for the first time on appeal. RecordData International, Inc. v. Nichols, 381 So.2d 1 (Ala. 1979). Finally, the trial judge in his order responding to the wife's motion to alter, amend, or vacate the judgment, or, in the alternative, for a new trial, stated that though some informal discussion of settlement offers occurred between himself and counsel for the respective parties prior to the conclusion of the trial, any disclosure of settlement offers was voluntarily made and at no time did the court compel such disclosure.
Finally, this court holds that the trial judge did not err in allowing the husband and his alleged paramour to invoke the privilege against self-incrimination when being questioned about possible acts of adultery. In the opinion of this court,Vail v. Vail, 360 So.2d 985 (Ala.Civ.App. 1977), rev'd on othergrounds, 360 So.2d 992 (Ala. 1978), controls this issue. In holding that a husband could invoke the privilege against self-incrimination when being questioned about possible acts of adultery, this court, in Vail, stated that individuals have the right to invoke the privilege "where the answer might tend to incriminate them in future criminal proceedings." 360 So.2d at 990. Though the adultery statute has been amended since Vail
was decided to require proof of both sexual intercourse and cohabitation, Ala. Code § 13A-13-2 (1977), an admission by either the husband or his alleged paramour that they had, on more than one occasion, engaged in sexual intercourse might tend to incriminate them in the event of criminal prosecution for adultery.
In the final analysis, it is the prerogative of the trial judge to initially determine whether an answer to a question would implicate the witness in future criminal prosecution. Exparte Blakey, 240 Ala. 517, 199 So. 857 (1941). The trial judge obviously determined that an answer to the questions being asked of them would implicate the witnesses. We cannot hold the trial judge erred in so holding.
The wife requests an attorney's fee for representation on appeal. In view of the additional periodic alimony available to the wife this request is denied.
This case is due to be affirmed in part, reversed in part, and remanded for entry of an order not inconsistent with the foregoing opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur. *Page 1129