INGRAM, Judge.
On April 23, 1987, the wife filed a complaint seeking a divorce on the ground of incompatibility. She later amended the complaint by asking the trial court to declare the husband’s post-separation transfer of assets to his daughter void on its face and to consider such assets part of the marital estate when awarding alimony and distributing the property. After an ore tenus hearing, the trial court granted the divorce on the ground of incompatibility. No fault was ascribed to either party. The husband was ordered to maintain the wife’s $1,626 per year hospitalization policy until she was eligible for Medicare or turned 65 years of age, whichever came first. He was also ordered to pay the wife alimony and allowed to satisfy this award by choosing one of three methods of payment prescribed in the decree. He could pay the wife either a lump sum of $8,000 in cash or $225 in cash for thirty-six consecutive months; or in lieu of the foregoing, he could give the wife the parties’ 1985 Oldsmobile and $2,500 in cash. The husband chose to pay the wife a lump sum of $8,000 in cash. The wife appeals, contending that the division of property and the award of alimony were so inequitable as to constitute an abuse of discretion.
The division of property and the award of alimony, after consideration of the equities and contributions of the parties, are matters which fall within the broad discretion of the trial court. The exercise of such discretion will not be disturbed on appeal absent a showing of abuse of discretion. Hinds v. Hinds, 415 So.2d 1122 (Ala.Civ.App.1982).
A property division in a divorce case is not required to be equal; it is, however, required to be equitable and graduated according to the nature of -the case. Mack v. Mack, 389 So.2d 1156 (Ala.Civ.App.1980). Factors which should be considered by the trial court when making such a division and award include the parties’ age, health, station in life, length of marriage, and future prospects. Weatherly v. Weatherly, 469 So.2d 653 (Ala.Civ.App.1985).
The parties were married approximately twelve years. Although no children were born of the marriage, they both had children by a previous marriage. The husband had one child, and the wife had four children.
The wife is sixty-three and achieved an eighth-grade education. The husband is sixty-seven and completed the sixth grade.
Although apparently in good health prior to the marriage, there is evidence that the wife was in poor physical condition at the time of the divorce. Over the course of the marriage, the wife lost sight in her left eye. She also developed osteoporosis, arthritis, and high blood pressure. There is evidence that the wife performed heavy chores associated with the farm. As a result, she fractured her back and was required to wear a brace.
*172 The husband’s health, unlike the wife’s, did not deteriorate substantially over the course of the marriage. He is disabled as a result of injuries sustained in World War II. He presently has a disability rating of 70 percent with the Veterans Administration.
The record reveals that the husband was fifty-six years old and self-employed at the time of the marriage. He lived on 123 acres located in Escambia County and primarily sold calves for a living. In addition to his farm income, he was drawing a Veterans Administration disability check. His assets included farm equipment, livestock, and $5,000 to $6,000 in savings. Neither the equipment nor the farm was encumbered by any lien or mortgage. The wife, who was fifty-one years old at this time, moved from Florida to reside with the husband on his farm. She brought few assets into the marriage.
The parties’ financial circumstances greatly improved over the course of the marriage. In 1983, certain oil companies expressed an interest in acquiring an oil lease and royalty interest in the husband’s property. The parties subsequently received around $80,000 after they entered into an oil lease and signed a royalty deed with one of these companies. With this money, the husband purchased new farm equipment for approximately $16,000 and a 1983 pick-up truck for $9,769.00. The remaining funds were placed in a joint certificate of deposit, which was renewed every six months. The husband later purchased a 1985 Oldsmobile Delta 88 for approximately $14,000. This vehicle was titled in the husband’s name, although there is evidence that it was primarily driven by the wife.
The parties separated on April 12, 1987. On this date, there existed a certificate of deposit jointly owned by the parties in the amount of $60,595.26. In addition, there existed approximately $8,000 in a passbook savings account and approximately $11,000 in a certificate of deposit in the husband’s name. The day after the parties separated, the husband gave his daughter $67,267 and placed these funds in a certificate of deposit in her name. This $67,267 was composed of the parties’ jointly held certificate of deposit and a portion of the $8,000 from the passbook account. The husband also transferred title to the 1985 Oldsmobile to his daughter.
The wife submits that these transfers were a fraudulent attempt on the husband’s part to deprive her of her interest in the vehicle and jointly owned certificate of deposit. There is evidence that these “gifts” to his daughter were unprecedented. The husband testified in essence that these “gifts” were an attempt on his part to divest the wife of her interest in these assets. In view of this evidence, we find these gift transfers void. Ingram v. Ingram, 143 Ala. 129, 42 So. 24 (1904).
The money initially placed in the joint certificate of deposit was derived from an oil lease acquired on property possessed by the husband prior to the marriage. We would note that the wife, along with the husband, signed the oil lease. In addition, the money received from the lease was placed in a certificate of deposit jointly owned by the parties. Under these circumstances, the source of marital property is not controlling. Isham v. Isham, 464 So.2d 109 (Ala.Civ.App.1985). Consequently, this money is part of the marital estate and, thus, subject to distribution.
The husband is clearly worth well over $100,000. This estimate includes the land, which is conservatively valued at $61,-500, and the jointly owned certificate of deposit worth $60,595.26. This estimate does not include the value of the house, farm equipment, vehicles, and livestock owned by the husband, nor does this estimate take into account the income the husband derives from the farm and the $1,000 per month he receives in Veterans Administration and Social Security benefits.
After devoting approximately twelve years to the parties’ marriage, the wife received only $8,000 in cash, coverage of her hospitalization policy for a limited period, and personal property of undetermined value. She has no formal job training, no marketable skills, and no prospects for *173 earning any money in the future. Prior to the marriage, she had been employed for approximately fourteen years as a seasonal worker. Her work primarily involved physical labor. Due to her poor physical health, she is unable to return to this kind of job.
The wife is presently living with one of her daughters in Florida and has no means of transportation. Her only source of income is $169 per month in Social Security benefits. There is evidence that the amount she receives from Social Security will increase in the future.
We are cognizant of the presumptions of correctness which attach to a trial court’s ore tenus findings in divorce cases involving alimony and property distribution. Nevertheless, we find the award to the wife to be so disproportionate as to constitute an abuse of discretion, in view of the parties’ total marital assets and relative circumstances at the time of the divorce. This case is reversed and remanded to the trial court to reconsider the disposition of the parties’ property in light of our finding the gift transfers from the husband to his daughter void and, thus, part of the marital estate.
REVERSED AND REMANDED WITH DIRECTIONS.
HOLMES, P.J., and ROBERTSON, J., concur.