Rel:  September 5, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

_____

## CL-2024-0875

_____

**Kendra Satterwhite Smith**

**v.**

**Anthony Thomas Smith**

**Appeal from Shelby Circuit Court**
**(DR-19-900092)**


EDWARDS, Judge.

In February 2019, Kendra Satterwhite Smith ("the wife") filed in the Shelby Circuit Court ("the trial court") a complaint seeking a divorce from Anthony Thomas Smith ("the husband").  The husband filed an answer and a counterclaim for a divorce.  Although the trial court

initially set the trial for March 30, 2020, the trial court continued the trial in compliance with our supreme court's administrative orders respecting the COVID-19 pandemic. The trial court reset the trial 14 times between March 2020 and April 25, 2023. The trial was commenced on April 25, 2023, and was continued to and concluded on July 25, 2023.

On May 23, 2024, the trial court entered a judgment divorcing the parties. Among other things, the judgment awarded the husband the marital residence, which the husband had owned before the parties married in November 2015. The trial court determined that the marital residence had appreciated over the term of the marriage in the amount of "Two Hundred and Seventy-Six Thousand Three Hundred Dollars" ($276,300), that the wife was entitled to a "Forty Percent (40%) share of the appreciation in equity in the marital residence," and that the 40% share to which the wife was entitled amounted to "One Hundred Thirty Eight One Hundred and Fifty Dollars ($106,920.00)."[1] However, the trial court declared that, because the wife had removed $99,000 from a joint

---

[1]We recognize that the "One Hundred Thirty Eight One Hundred and Fifty Dollars" and the $106,920 amounts stated in the judgment regarding the 40% share of the increase in the equity of the marital residence due to the wife conflict significantly and that neither amount is 40% of $276,300.

2

bank account owned by the parties at the time of the parties' separation,[2] had "sold her pre-marital residence and kept all proceeds therefrom in her separate [bank] account, and [had] kept all of the proceeds from the sale of her [late] brother's [house] without apply[ing] any of the proceeds to the marital assets," the wife's share of the equity already had been realized. The trial court further declined to award the wife any portion of the husband's retirement account, explaining that

> "the value of the [h]usband's Southern Company Employees Savings Plan from the date of the parties' marriage until the date of the filing of the complaint for divorce in this matter increased by Fifty-Five Thousand Two Hundred and Five and 92/100 Dollars ($55,205.92). Due to the brevity of the marriage, and to the excess of marital property retained by the [w]ife during the marriage as established in the preceding paragraph [regarding the marital residence], the wife is not entitled to any portion of the [h]usband's retirement account."

The trial court also awarded the wife all rights to her real-estate business and awarded each party any accounts maintained in his or her sole name. The judgment made each party responsible for his or her own attorney fees.

---

[2]Testimony in the record indicates that the joint bank account had been depleted by the time of the trial by the wife's removal of $99,000 and the husband's removal of the remaining funds in that account.

The wife filed a timely postjudgment motion directed at the judgment. In that motion, among other arguments not pertinent to the issues in this appeal, she argued that the trial court had made an error in its calculation of her 40% share of the increase in the equity of the marital residence; she correctly contended that "[f]orty percent (40%) of was $276,300.00 [(the amount the trial court calculated to be the increase in the equity in the marital residence)] is $110,520.00, not $106,920.00."[3] She further argued that the trial court had erroneously set off certain amounts against the award to her of a share of the increased equity in the marital residence. Specifically, she contended that she had been entitled to the $99,000 she had withdrawn from the joint bank account because that amount was half of the funds in that account at that time and that the trial court had "erroneously [determined] that [she had] kept all proceeds from the sale of her pre-marital residence and her [late] brother's [house] without applying any of the proceeds to the marital assets." The wife contended that she had not received any of the proceeds from the sale of her late brother's house. She complained that the trial

_____

[3]The wife made no argument concerning the striking difference between the "One Hundred Thirty Eight One Hundred and Fifty Dollars" and the $106,920 amounts recited in the judgment.

4

court had failed to recognize "significant contributions" she had made from her separate funds toward the marital residence, including, she stated, paying mortgage payments, purchasing furnishings, paying utility bills, and funding maintenance. She also stated that "[t]he correct figure [of her share of the marital residence], based on a fifty percent (50%) share of the appreciation, should be $138,150.00."[4] The wife further argued that the trial court should have awarded her one-half of the increase in the value of the husband's retirement account and that she should have been awarded a reasonable attorney fee. After a hearing, the trial court denied the wife's postjudgment motion, and the wife timely appealed.

The only witnesses at the trial were the husband and the wife. The wife testified that the parties had married on November 4, 2015, and that they had separated in February 2019, shortly before she commenced her divorce action. The wife admitted that she and the husband had been married for only three years and three months before she commenced her divorce action. She testified that she had sold the house that she had

---

[4]We note that this amount is the amount reflected in the written value of the wife's 40% share of the increased equity in the marital residence contained in the judgment.

5

lived in before the marriage and that she had received between $7,000 and $8,000 in proceeds, all of which she had deposited into her separate bank account. She also testified that her earnings as a real-estate agent, which, she said, were approximately $2,200 per month during the marriage, had also been placed into her separate bank account and not into the parties' joint bank account, which had been established in December 2017, shortly after the birth of the parties' child. The wife admitted that none of the funds that had been held in the joint bank account in February 2019 had been supplied by her.

The wife admitted that she had sold real estate during the marriage and after the parties' separation, but, she said, "not that often." She admitted that her 2022 income-tax return reflected that her income that year was $74,000. According to the wife, she had used her employment income to pay for groceries and for everything required by her two older children from a previous relationship. She also said that she had used her income to pay for her work expenses. She testified that she had paid the mortgage payment on the marital residence "before" but admitted that the husband usually made that payment. She further testified that she had expended her personal funds on "furnishings" for the marital

6

residence, but she failed to elaborate on what furnishings she had purchased for the marital residence.

According to the wife, in 2016, the marital residence had been appraised at $382,000. She testified that, based on a market analysis that she had conducted, the marital residence was, as of the time of trial, valued at $658,300. Thus, the wife explained, the marital residence had appreciated in value in the amount of $276,300, and she requested that she be awarded one half of that amount, or $138,150. She also requested one-half of the increased value of the husband's retirement account, which, she said, totaled $55,205.

The husband testified that he had purchased the marital residence in October 2013, before he met the wife. He said that he still owed $190,000, "give or take $10,000," on the mortgage associated with the marital residence. The husband conceded that the marital residence had appreciated in value and that the marital residence was valued at $658,300 "give or take"; he stated that it could be worth $550,000 or $650,000 but not $750,000. He testified that he did not believe that the wife was entitled to any of the equity in the marital residence, because,

7

he said, he had owned it before the marriage and because she had not contributed financially to the parties' marriage.

According to the husband, his yearly income ranged between $90,000 and $100,000. He later testified that he had earned $103,000 through his employment in the previous year and that he also earned a yearly bonus, which, he said, he usually received each March; he said that he had received a $16,000 bonus in March 2023. He also testified that the wife had not provided any of the funds in his retirement account, which, he said, had been instituted "long before" the parties' marriage. Thus, he stated, he did not believe that she was entitled to any portion of his retirement account.

The husband opined that the joint bank account was not marital property. He explained that he had initially held a separate bank account from the wife but had opened the joint bank account after the birth of the parties' child in 2017. He stated that the funds contained in the joint bank account were solely his, were derived from his income, and included $76,000 that he had borrowed from his parents in 2016. He also said that the joint bank account contained approximately $41,000 of the profit that he had realized from the sale of a house that he had purchased

and renovated.[5]  He testified that the wife had not assisted in the renovation of that house.  Like the wife, he testified that neither the proceeds from the sale of the wife's premarital residence nor her employment income been placed into the joint bank account.  He said that he had never asked the wife what she did with the income she earned from her real-estate sales.

The testimony regarding the house that had been owned by the wife's late brother indicates that the wife's brother had passed away and that the husband had purchased his house at a foreclosure sale on the courthouse steps.  The husband testified that

> "it was told to me her parents had invested a lot of money in that house, redid it, whatnot, it was an older home.  The house went for sale here on the courthouse steps in foreclosure. I purchased that house cash money, fifty-eight thousand dollars roughly. They compensated me back, gave me my money back for that house, and in turn sold it for a profit of according to tax records around ninety-two thousand dollars, eighty, ninety thousand dollars profit they recovered due to that."[6]

---

[5]Specifically, the husband testified that he had purchased a house for $176,000 at an auction held on "the courthouse steps" and that he had sold the house, after renovating it, for $217,000.

[6]We are uncertain whether the foreclosure sale took place before the death of the wife's late brother, when he owned the house, or whether it took place after his death, when the house was owned by either his estate or one or more of his heirs.  The record also fails to reflect exactly

The husband presented no evidence indicating that he had ever held an ownership interest in the late brother's house or what, if any, agreement he may have had with the wife or her parents regarding his purchase of the late brother's house at the foreclosure sale and the subsequent sale of that house. However, the husband stated that he had not received any of the profit on the sale of the wife's late brother's house and, specifically, that none of the proceeds from its sale had been placed into the joint bank account.

When asked if she had realized any proceeds from the sale of her late brother's house, the wife testified that she "wasn't in that transition [sic]."[7] She said that her late brother's house had not been titled in her name but had instead been titled in the name of her parents. She explained that her mother had kept the proceeds from the sale of that house.

_____

when the husband assisted in the purchase of the late brother's house, when the husband was reimbursed for his expenditure, and when the house was ultimately sold.

[7]We question whether the wife actually testified that she had not been involved in the "transaction" that resulted in the sale of her late brother's house.

The wife testified that she had separated from the husband because she was worried about her safety and the safety of the parties' child. She explained that the environment in the marital residence had been "very unpleasant" and "controlled, mood swings, not healthy for [the child] to be around." She indicated that the husband had spoken to her in a negative way and that "his temperament had started to rise again."

On appeal, the wife argues that the division of the marital property was inequitable. In her brief, the wife indicates that the marital estate comprised the $200,000 contained in the joint bank account, the $276,300 appreciation in the value of the marital residence, and the $55,205 appreciation in the value of the husband's retirement account, which total $531,505. She complains that the trial court incorrectly calculated her 40% share of the $276,300 in increased equity in the marital residence, which, she said, should be $110,520 and not $106,920; she further contends that she was entitled to a greater share of the appreciation in the value of the marital residence than the 40% the trial court awarded. She further argues that the trial court should not have considered the proceeds she received from the sale of her premarital residence or the alleged proceeds from the sale of her late brother's house,

11

which she testified she had not received, in determining that she had "realized" her share of the increased equity in the marital residence. In addition, she complains that she was entitled to the $99,000 that she had withdrawn from the joint bank account as an equal division of a marital asset. She also contends that she was entitled to one-half of the $55,205 appreciation in the value of the husband's retirement account. Finally, she contends that the trial court should have awarded her a reasonable attorney fee.

We begin our analysis by observing the oft-stated principle that "'"[p]roperty divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court."'" Ex parte Durbin, 818 So. 2d 404, 408-09 (Ala. 2001) (quoting Morgan v. Morgan, 686 So. 2d 308, 310 (Ala. Civ. App. 1996), quoting in turn Duckett v. Duckett, 669 So. 2d 195, 197 (Ala. Civ. App. 1995)). The wife concedes that a trial court dividing the property of the parties upon a divorce "'should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have

12

become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage.'" Yokley v. Yokley, 231 So. 3d 355, 360 (Ala. Civ. App. 2017) (quoting Golden v. Golden, 681 So. 2d 605, 608 (Ala. Civ. App. 1996)). Because "'[m]atters of property division rest soundly within the trial court's discretion[,] its determination regarding those matters will not be disturbed on appeal unless its discretion was plainly and palpably abused.'" Id.

The trial court's judgment is, in a word, unclear regarding the amount that the wife is due as her share of the equity in the marital residence. According to the terms of the judgment, the wife is entitled to either 40% of $276,300, which is, if correctly calculated, $110,520; "One Hundred Thirty Eight One Hundred and Fifty Dollars" ($138,150, which is one half of $276,300); or $106,920, which is the numerical statement of the amount stated in the judgment. Although the wife complained in her postjudgment motion that the trial court's percentage calculation in the judgment was incorrect, the trial court failed to issue a corrected judgment to clear up the miscalculation or to address the ambiguity in the award. Thus, we must reverse the judgment and remand the case to the trial court for it to indicate clearly the share of the equity to which

the wife is entitled.  See Shipp v. Shipp, 435 So. 2d 1298, 1299 (Ala. Civ. App. 1983) (reversing a divorce judgment because a provision within the judgment was ambiguous and uncertain).  However, because the trial court also determined that the wife's share of the equity, whatever amount that might be, had been realized through her withdrawal of the $99,000 from the joint bank account, her retention of the proceeds derived from the sale of her premarital residence, and her alleged retention of an unspecified amount of proceeds from the sale of her late brother's house, and because those same issues will likely recur when the trial court considers entering a new judgment on remand, we address, in part,  the wife's arguments relating to those issues.

The fact that the husband created a joint bank account held jointly by him and the wife, coupled with the reasonable inference, based on the husband's testimony that his income was placed into the joint bank account, that the husband paid his expenses, including the mortgage payment on the marital residence, from the joint bank account, supports a conclusion that the joint bank account is marital property subject to division.  See Huckabee v. Huckabee, 544 So. 2d 170, 172 (Ala. Civ. App. 1989) (determining that "money received from [an oil] lease [on property

14

owned by the husband before the marriage] was placed in a certificate of deposit jointly owned by the parties" and stating that, "[u]nder these circumstances, the source of marital property is not controlling"); <u>Isham v. Isham</u>, 464 So. 2d 109, 111 (Ala. Civ. App. 1985) (affirming the award to a wife of certain portions of certificates of deposit and money-market accounts because they had been "taken in the joint names of the parties" and stating that "[i]t has been held that the trial court is under no requirement to attempt to set aside gifts or inheritances when these assets become the property of both spouses"). Indeed, the trial court references the joint bank account as being a "marital account," indicating, perhaps, that it considered the joint bank account to have been a marital asset. In contrast, the judgment appears to conclude that the wife was not entitled to any portion of the funds contained in the joint bank account at the time of the separation of the parties and that the entirety of the $99,000 the wife removed from the joint bank account should serve to satisfy, at least in part, the portion of the increase in the equity of the marital residence to which the trial court determined that the wife was entitled. Certainly, the evidence before the trial court supports the conclusion that the joint bank account had not, in fact, been funded by

15

joint contributions from the parties during the marriage. Instead, the husband testified that the funds in the joint bank account were provided solely by him, and the wife admitted that she had not placed any money that she had earned from her employment or the proceeds that she had received from the sale of her premarital residence into the joint bank account, which, notably, did not exist at the time she sold her premarital residence. Thus, the trial court could have, based on the source of the funds contained in the joint bank account or the relatively short duration of the marriage, both of which are factors relevant to the division of property upon a divorce, reasonably determined that the funds in the joint bank account should not be equally divided between the parties. Because we are reversing the trial court's judgment based on the ambiguity and uncertainty in the amount of the increase in the equity in the marital residence actually due to the wife, we instruct the trial court, on remand, as part of its clarification of the property division in the judgment, to consider the joint bank account as marital property and to determine the portion of the account, if any, to which the wife is entitled.

On appeal, the wife further contends that the trial court erred by setting off against the equity to which she was entitled from the marital

16

residence the proceeds that she received from the sale of her premarital residence and any unspecified proceeds that trial court determined that she received from the sale of her late brother's house. The wife's premarital residence was clearly her separate property at the time of the marriage. See Nichols v. Nichols, 824 So. 2d 797, 802 (Ala. Civ. App. 2001) ("The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage ...."). A party's separate property may not be considered in a division of the marital estate. See Ex parte LaMoreaux, 845 So. 2d 801, 806 (Ala. 2002) (explaining that property acquired by gift or through inheritance by a spouse during a marriage retains its status as separate property of the recipient spouse unless the property is used for the common benefit of the marriage and that, unless it is used for the common benefit of the marriage, the property may not be considered in the division of the parties' property); and Hull v. Hull, 887 So. 2d 904, 908-09 (Ala. Civ. App. 2003) (reversing a judgment because the trial court considered in its division of property a wife's separate property that had not been used for the common benefit of the parties and stating that "the trial court was precluded by [Ala. Code 1975,] § 30-2-51(a)[,] from considering [that separate property] at all in

17

dividing the parties' marital property" (emphasis added)).  Although the wife's decision to retain the proceeds she received from the sale of her premarital residence in her separate bank account could have maintained the status of that money as her separate property such that it could not be considered in the trial court's division of marital property, see Ala. Code 1975, § 30-2-51(a) ("Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."), the wife testified that she had used money from her separate bank account to pay for "all the groceries," i.e., that she regularly paid for certain of the parties' living expenses out of her separate bank account. Thus, at the trial court's discretion, the wife's separate bank account could have been considered in the division of property.  See Morgan v. Morgan, 322 So. 3d 531, 540 (Ala. Civ. App. 2020) (explaining that "[n]othing in the language of § 30-2-51(a) indicates that property acquired by one spouse before marriage or property acquired through inheritance or gift is transmuted into marital property by its use for the

18

common benefit of the parties" and instead that a trial court may, in its discretion, consider such property in its division of the marital estate); see also Ex parte Durbin, 818 So. 2d at 408, and Ex parte Drummond, 785 So. 2d 358, 362 (Ala. 2000). We question how the trial court could have considered the wife's separate bank account in its division of the marital property, however, because the record contains no indication of the value of that account at the time of the parties' separation or at the time of the trial. If the trial court concluded that the wife's separate bank account should not be considered in the division of marital property, the trial court should not have considered the proceeds from the sale of the wife's premarital residence in making its division of property. See Ex parte LaMoreaux, 845 So. 2d at 806; Hull, 887 So. 2d at 908.

As the wife argues, the trial court's decision to offset the wife's interest in the increase in the equity in the marital residence by the proceeds from the sale of her late brother's house is error. The husband presented no evidence that he held an ownership interest in that house or that the wife had realized any profit or had retained any proceeds from the sale of that house. Instead, he testified that he had been told that the wife's parents had put a lot of money into that house, that "they" had

19

reimbursed him the $58,000 he had used to purchase the house at the foreclosure sale, and that "they" had sold it for a profit. Thus, the husband testified that the wife's parents -- not the wife -- sold the late brother's house for a profit. The wife testified that she had not held any ownership interest in the late brother's house and that her mother had retained any proceeds or profit realized from the sale; the record contains no contrary evidence. We recognize that, under the ore tenus rule, a trial court may disbelieve or discount all or part of the testimony of a witness. See Williams v. Williams, 905 So. 2d 820, 826 (Ala. Civ. App. 2004) (quoting Glazner v. Glazner, 807 So. 2d 555, 559 (Ala. Civ. App. 2001)) ("The presumption of correctness under the ore tenus rule 'is based on the trial court's unique position to observe the witnesses and to assess their demeanor and credibility.'"). However, the trial court may not indulge in an inference that is not fairly deducible from the evidence presented. Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So. 2d 1220, 1224 (Ala. 1992) (explaining that "[a]n 'inference' is a reasonable deduction of fact, unknown or unproved, from a fact that is known or proved" and that "[a]n inference must be based on a known or proved fact"). Because the record contains no evidence indicating that the wife

received any proceeds from the sale of her late brother's house, the trial court erred in using some unspecified amount of proceeds from the sale of the late brother's house to offset the wife's share of the increase in the equity in the marital residence. On remand, the trial court may not include any unspecified share of proceeds realized from the sale of the late brother's house in fashioning its property division.

In conclusion, we reverse the judgment of the trial court relating to the award to the wife of a share of the increased equity in the marital residence, and we remand the cause with instructions that the trial court specify the exact amount of the equity in the marital residence to which the wife is entitled. In addition, the trial court should determine whether the wife's separate bank account should be included in the division of the parties' property and should adjust the property division as necessary based on that conclusion. Because we have also determined that the trial court may not offset the proceeds the wife received from the sale of her late brother's house and because we have instructed the trial court to consider what portion, if any, of the funds held in the joint bank account should be awarded to the wife, the trial court is permitted upon remand to reconsider all aspects of the property division and to adjust the equities

21

based upon the evidence contained in the record. We therefore pretermit consideration of the wife's arguments relating to the overall inequity of the property division, including her arguments relating to her request for an award of a portion of the husband's retirement account and the trial court's decision not to award her an attorney fee.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.